OaRuoteRs, J.,
delivei’ed the opinion of the court.
This is an issue of devismit vel non, on the will of Joshua Tates, from the circuit court of Bedford county: The contestants are the children of two of his daughters, Malinda and Eebecca, who died before the testator made this will. These grand-children are excluded by mistake, as they insist, from any benefit under the will. The will, *465 after making ample provision for tbe widow, gives tbe estate to bis “ children.” These grand-children, are, therefore, excluded, contrary, as they contend, to the intention of testator, as expressed before, at the time, and after the writing and publication of the will, by mistake of the draftsman.
This is the ground of contest. Various questions of pleading and evidence arose, in the decision of which, by the court, it is alleged there is error. We will notice them in the order in which they are presented. To the declaration and averments of the executors, in propounding the paper writing, exhibited as the last will and testament of Joshua Tates, deceased, the contestants offer four pleas, tendering issues. The first, second and third, in substance, deny that the sixth, seventh and eleventh clauses, are part of his will. These items are eopied into the several pleas, and embrace all the will which bequeaths property to his “ children.” The contestants are grand-children; and the objects of these pleas are, to raise the question that they were intended to be included, and that their exclusion was by mistake of the draftsman. The fourth plea is general, and is in these words: “ And the said defendants say, the said paper writing is not the last will and testatment of said Joshua Tates, deceased, and of this, they put themselves upon the country. Coopee, for defendants.”
On this last plea issue is taken, and the other three are stricken out by order of the court. It is contended that this was error; because it is, in effect, denying the right to contest one part of the will, without attacking the whole; or that it is an assertion of the principle that' the whole will must stand, or fall, together. We do not understand his honor so to decide. At least, such is not, *466 necessarily, tbe effect of the judgment striking out these pleas. In making up an issue of devismit ml non, under our acts of 1835, ch. 6, § 6; 1836, ch. 5, § 9, and ch. 18, § 2, C. & N., 110, no particular form of pleading is required. All that is necessary, is, that the paper should be propounded, and averred to be the will by the' executor, and a denial that this affirmation is true, by the contestants. If the latter choose, for the purpose of saving cost, or any other reason, to limit the contest to any particular clause, thereby admitting and putting out of dispute, the balance of the will, they would have a right to do so; and perhaps it'would be error not to allow the issue to be so limited. But it is not necessary here, to decide that question, and we do not do so. In this case, the whole will was put in issue by the fourth plea, and there could be no necessity for the special pleas, if they may be so called. We can see no necessity for a multitude of pleas in this proceeding; it is not contemplated by the statutes. Its effect would be to deprive the proceeding of that simplicity which should characterize it. It would be very easy, if such be the intention of the party, to limit the contest to any particular part, or parts of the will, or to one description of property in a single plea. If it is thought that the will is good as to personalty, and not for land, which is the case in Guthrie vs. Owen, 2 Humph., 202, for want of the solemnities necessary for the latter, and not for the former; or, as in this case, good as to the bequests to the widow, but not as to those to the children, because of the mistake in omitting the grand-ehildren, the issue could be so formed without any difficulty. But where is the necessity of allowing such partial attacks, together with a general denial of the whole will, as was proposed in this case? *467 The only reason for allowing a special, instead of a general plea, or issue, is, to save cost in the investigation. But, if more issues than one are made, and one be general, then the reason fails, and there is no necessity for the special pleas, as the general issue throws open the whole case, and brings the entire will into the contest. ,
His honor, the circuit judge, it is contended, charged the law to be, that a will could not be sustained in one part and defeated in another. If this be the proper construction of the charge, we could not concur in it, but consider that the law is otherwise. But we cannot see how the defendants could be injured by it, as he expressly charged, that if there was fraud or mistake in the clauses of the will which are assailed, that the verdict of the jury must be for the defendants. The effect of the charge would be to produce a finding against the will to the extent desired by the contestants, and still further. It is true that the charge would have been more correct, if the jury had been informed, that they might find that it was a good will in all its provisions, except the 6th, 7th and 11th items, and as to them, it was not the will of the deceased. But we do not regard it as sufficient cause to reverse, on the appeal of' contestants, that the charge went further, and was stronger against the will than they desired. "We are told that the jury might have been witling to break the will in part, but not understanding from the charge they could do that, without setting it aside entirely, they might have failed to go to the extent authorized by the proof. We cannot presume that they would find a verdict against the law, as laid down by the court, upon considerations of this kind. It is enough to see, that *468 they were instructed that it was tbeir duty to find for' defendants, if the proof satisfied them that there' was fraud or mistake in any part of tbe will.
The counsel of defendants requested the court to charge eight distinct propositions, as the law, which were presented in writing, and all set forth in the record. The court declined so charging, on the ground that so far as they were considered to be correct, and applicable to the case, they were embraced in bis general instructions already given. Without going into detail, it is enough to say that we think his honor committed no error in this. Some of the propositions are law, but they had been sufficiently charged. Others are equally true, but had no application to the case made out to the jury, by the proof; and others again embraced principles of law that would be correct in fixing a construction of the will, before a proper tribunal, but had no application on an issue of devismit vel non in a court of probate.
Again, we would not feel authorized to grant a new trial in this case, even if we thought the court had erred in not distinctly charging the jury that they might find against the will, as to some particular clauses, and sustain it as to others, because we see that there is no evidence in this record, that could have produced such a verdict, on any correct application of the law. There is no evidence to sustain a different verdict, and the issue was such as to let in all the legal proof that could be adduced by the’ parties, and the charge such as to give it its full force and effect.
But in the last place, it is argued that the court erred in excluding legal evidence, which, if admitted, would have produced a different result, or might have done so. If this be so, a new trial should be granted, *469 as we cannot weigh excluded evidence, if competent, and determine what effect it would have had upon the jury. The evidence rejected was of this character: Did not the testator say before the making of the will, tliat he intended to include the children of his two deceased daughters, his grand-children, equally with his own children, in the bequests of all his property, after providing for his wife? Did he not say this down to the day of making his will, and afterwards, till his death ? Did he not say after he made it, that if it were not thus written, it was not his will, and he would alter it if it were not so? &c. &c.
Now all this was properly excluded, and is not legitimate proof to show mistake or omission. If such proof were allowed, it is • easy to see that any will might be altered, revoked or annulled by verbal evidence, which would be 'in conflict with our statutes of wills, and of frauds, and the rules of evidence founded in the experience and wisdom of ages, for the preservation of writings from alteration or change, by the proof of facts, resting in the frail memory of man. Such a rule would open a door for frauds and perjuries of the most alarming character, and render insecure all the rights of man. On this branch of the case, it is unnecessary to do more than to refer to the case of Weatherhead vs. Sewell et als., 9 Humph., 272, and the authorities there cited by the court. In that case, it was proposed to prove, that the testator said a few minutes before the draftsman commenced writing the will, that it was his purpose to give a small tract of land to his daughters, and the whole of his estate besides, to his sons, and the writer, instead of the word “sons,” inserted the word “children,” by which the *470 daughters were included. The witness also proved, that at the same time, be said bis only object in making bis will was to provide something for bis daughters, as they were then excluded by law, as to bis land, it being previous to the act of 1790, and the provision was to give them a “small tract of land.” But this proof was ruled to be illegal, and improperly admitted by the circuit judge. And in that case, the will bad not been read to the testator, after it was written, but he signed it, being at the time of sound mind, though in a few hours of his death. In the case now before us, it was distinctly and correctly read over once, twice or three times before it was signed, as proved by the witnesses.
Upon these facts, the court very correctly charged, that even if it had been written contrary to his intentions, as declared previously and subsequently, the presumption would be conclusive of a change of purpose and satisfaction with the will as it was written, if correctly read to him. In a case where the will is not written by a legatee, it is a presumption of law, if the testator is of sane mind, that ho correctly understands the paper he signs; and much more so, if it is also proved that it was correctly read to him. This presumption cannot be .overthrown by oral evidence of declarations made before or after. What has thus been written and signed, is the best evidence of his intentions, and cannot thus be shaken. In the celebrated case of The Earl of Newburgh vs. The Countess of Newburgh, 5 Madd., 364, cited and approved by this court in the case of Weatherhead vs. Sewell, the rule is thus laid down: “Barol evidence is not admissible to supply any clause or word which may have been inad *471 vertently omitted by the person drawing or copying the will.”
There was no proof offered in the case before us, to show that at the time the wTill was written, any thing was inserted against the directions of testator, or omitted that he directed to be inserted, by Inistake, inadvertence or accident. "What effect such proof as that would have, if made in a case like this, where the will was read over before signing and appi’oval; or even when it was barely signed by a competent testator, we will leave to be decided when such a case shall arise. That question is not presented in the case now before us. We'need say nothing about the effect of fraud in the draftsman, as there is no pretence of that in this case.
We affirm the judgment of the circuit court.
Note.— After the delivery of this opinion the attorney for defendants, on a petition for a reconsideration of the ease, stated that the plea of the general issue as it is designated, was not offered until the special pleas were stricken out by order of the court, and that its. wrong position in the record, produced this misconception, and the judgment of the court is referred to as well as the brief of the opposite counsel for this correction. We have to take the record as it is and' decide upon it accordingly. But if this were not so, and the case had been clearly presented by the record, as it is now contended it is or should be, it would not change the result of this opinion. We would be forced to the same conclusion upon the other grounds stated in the opinion. * Carutiieks.