SHANNON, Judge.
This is an appeal from an order of the County Judge’s Court which denied a peti-tion to revoke the codicil to a will.
The appeal was taken after the expiration of 30 days and prior to the expiration of the 60 day period. Consequently, we have held up disposing of the instant case during the pendency of two cases before the Supreme Court wherein the question for decision was whether or not the appeal period from an order in the Probate Court was 30 or 60 days. The Supreme Court now having decided that it was 60 days we can hand down our opinion accordingly. These cases are: In re Estate of Wartman (Wartman v. Wartman), Fla., 128 So.2d 600, and Congregation Temple deHirsch, of Seattle, Washington v. Aronson, Fla., 128 So.2d 585. The opinion in each of these cases was dated March 22, 1961.
In April, 1952, an attorney for First National Bank in St. Petersburg, Florida, prepared a will for Ann M. Mullin, Deceased. In the body of the will it was provided as follows:
“Second: I hereby give and bequeath the sum of $500.00 each to the following persons: Martha C. Coslet, now residing at 1172 Altadina Avenue, Cincinnati, Ohio; Joseph P. Coslet, residence known by Martha C. Coslet, his mother; Charles Coslet, Jr., residence known by Martha C. Coslet, his mother; Virginia Coslet Ainsworth, residence known by Martha C. Coslet, her mother; and Mary C. Owen, 111 Washington Avenue, Bellevue, Kentucky.
“Third: I hereby give, devise and bequeath to my dear sister, Mary H. LeClair, sometimes known as Mary H. Babb, my real estate holdings located at 750 6th Street South, St. Petersburg, Florida, and 325 14th Street North, St. Petersburg, Florida, together with all furniture, furnishings, fixtures and equipment owned by me and which may be in or about the above described premises at the time of my death, to be held by my said sister in fee simple and absolutely. It is my suggestion that my said sister continue to live on the property at 750 6th Street South, St. Petersburg, Florida.
“Fourth: All of the rest, residue and remainder of my estate of whatsoever kind and wheresoever situated, I give, devise and bequeath to the First National Bank in St. Petersburg, a National banking corporation with its principal place of business at St. Pe-tersburg, Florida, as Trustee, to be held by it in trust, to invest, re-invest and manage the same for the following uses and purposes :
“(a) From my said trust estate, my said Trustee shall pay to my sister, Mary H. LeClair, sometimes known as Mary H. Babb, the sum of $150.00 per month to be paid from the time of my death until the time of the death of my *619 said sister, said sum to be paid first from the income but if the income is insufficient, then the balance from principal and I direct that my said Trustee give every kindness and consideration to my said sister.
“(b) The trust created by this will shall end upon the death of my said sister, Mary H. LeClair, sometimes known as Mary H. Babb, and upon the ending of the said trust, the entire trust corpus, together with any accumulation and undistributed income shall be divided equally between the above named Martha C. Coslet, Joseph P. Coslet, Charles Coslet, Jr., Virginia Coslet Ainsworth and Mary C. Owen, or. in the event that any of said persons shall die prior to the termination of the said trust, then the balance of my trust estate shall be divided equally between the survivors of them.
“(c) The Trustee appointed under this will and its successors, in addition to the powers given by the laws of the State of Florida, shall have the following powers: * *
Subsequently, on November 1, 1957, the same attorney was called to a local hospital by Ann M. Mullin. On arrival, he was informed that the sister, Mary H. LeClair, sometimes known as Mary H. Babb, had died, and that the testatrix wanted to make appropriate changes in the will. She instructed the attorney to draft a codicil deleting the provisions relating to the trust for her sister, and incorporating certain other suggestions. Otherwise she desired the provisions in the original will to remain intact. The attorney made notes and then went back to his office and prepared the codicil.
Later that same day, the attorney returned to the hospital, accompanied by two employees of the First National Bank, who were to act as witnesses. In the presence of these witnesses the attorney read the codicil to Mrs. Mullin and then explained the various sections. The attorney had a copy of the original will with him, but apparently Mrs. Mullin was well aware of its provisions and it was not deemed'necessary to re-familiarize her with its contents. It further appears that she understood the terms and the wording of the codicil.
The codicil was executed and duly witnessed, and it reads in part as follows:
“ * * * Inasmuch as my dear sister, Mary H. LeClair, sometimes known as Mary H. Babb, has predeceased me, I hereby revoke paragraph Third and paragraph Fourth, subpara-graphs (a) to (c) inclusive, wherein I made provisions for my said sister * * (Emphasis added.)
It will be seen that, by these revocations, the petitioners are apparently excluded as residuary legatees, which they contend is contrary to Mrs. Mullin’s intention.
The testatrix died on November 12, 1957, and the will and codicil were admitted to probate shortly thereafter. The petitioners sought revocation of the codicil and the County Judge denied their petition, whereupon the petitioners appealed to this court.
The gist of the appeal is whether or not a scrivener’s mistake in drafting is sufficient reason to revoke the probate of an otherwise valid testamentary instrument. The usual grounds for upsetting a will or codicil are not present here, there being no question of Mrs. Mullin’s capacity. The sole issue in this case revolves around a draft-man’s mistake.
Under § 731.08, Florida Statutes, F.S.A., a will is void if the execution thereof is procured by mistake. The appellants claim that a scrivener’s mistake is included under the operation of this statute. However, in the case of Forsythe v. Spielberger, Fla. 1956, 86 So.2d 427, at page 430, our Supreme Court said:
“We do not think Sec. 731.08, F.S., F.S.A., has any relation to mistakes in inducement but has reference to wills *620 secured by fraud, duress, mistake or undue influence. (Citing authority). Another reason this is true is that after the death of the settlor he can no longer make disposition of his property ; hence a trust agreement like any other testamentary devise should not be modified or invalidated for mistake in the inducement.”
In 1 Page on Wills (3d Ed.1941), § 163, p. 323, it is stated:
“Since mistake is essentially an unconscious ignorance or forgetfulness about material facts, it is held, by the great weight of authority, that mistake depends on a testator’s opportunity to acquaint himself with its contents. If the will is read by testator, or he has a fair opportunity to read it, or if it is read to him, it is generally held, in the absence of fraud or undue influence, that he is to be treated as though he knew its contents and a variance between the instructions which he has given and the contents of the will as executed does not render the will invalid." (Emphasis added).
This is supported by the case of In re Gluckman’s Will, 1917, 87 N.J.Eq. 638, 101 A. 295, 296, L.R.A.1918D, 742, wherein the court said:
“ ‘Where a testator, in addition to complete testamentary mental capacity, is in full enjoyment of average physical and educational faculties, it would seem that in the absence of fraud or undue influence a mistake, in order to defeat probate of his entire will, must in substance or effect really amount to one of identity of the instrument executed; as, for instance, where two sisters, in one case, or a husband and wife, in another, prepared their respective wills for simultaneous execution and through pure error one executed the other’s, and vice versa. * * * Short of this, however, or of something amounting in effect to the same thing, it is against sound public policy to permit a pure mistake to defeat the duly solemnized and completely competent testamentary act. It is more important that the probate of the wills of dead people be effectively shielded from the attacks of a multitude of fictitious mistakes than that it be purged of wills containing a few real ones. The latter a testator may, by due care, avoid in his lifetime. Against the former he would be helpless.’ ”
See also Idle v. Moody, 1939, 344 Mo. 594, 127 S.W.2d 660.
We find the County Judge’s order to be in accordance with the authorities noted above and it is therefore affirmed.
Affirmed.
KANNER, Acting C. J., and GERMANY, JOHN, Associate Judge, concur.