IN THE MATTER OF THE WILL OF BRUCE COBB, DECEASED.

(Filed 25 August, 1967.)

**1. Wills § 45—**

Unless the will or deed expresses a contrary intent, the words "next of kin" will be construed to mean "nearest of kin," and nothing else appearing, the words do not permit a distribution under the principle of representation.

**2. Wills § 18—**

Deeds executed after the testator's death whereby the propounders and the caveators had conveyed two tracts of the testator's lands are incompetent in evidence on the question of testator's intent in using words having a well defined meaning, since in such instance testator's intent must be gathered from the language of the will itself.

**3. Same—**

Testator bequeathed property "to my next of kin as provided by the General Statutes of North Carolina." The draftsman of the will, an attorney, sought to testify that he erroneously omitted the words "as if I had died intestate" from the language of the bequest, but that the testator had intended and had understood that his property would devolve under the intestacy laws. *Held:* The testimony was properly excluded, since, in the absence of evidence of fraud, duress, or mistake as to the identity of the instrument executed, the mistake of the draftsman in expressing the intent will be regarded as the mistake of the testator and binding upon him.

APPEAL by caveators from *Cowper, J.,* 19 September 1966 Session of BERTIE.

Caveat to Item 3 of the Will of Bruce Cobb, who died 29 June 1965, a resident of Bertie County. On 1 July 1965, the following paper writing was probated in common form as his will (attestation clause omitted):

"I, Bruce Cobb, of Bertie County, North Carolina, being of sound mind and memory, but considering the uncertainty of my earthly existence do hereby make, publish and declare this to be my last Will and Testament as follows:

"1. I direct my Executor hereinafter named to see that my body is given a suitable burial and my debts and funeral expenses paid from my estate.

"2. I give and bequeath to Joel Asher the sum of $500.00.

"3. All other property of every kind and description and wheresoever situate I give, devise and bequeath to my next of kin as provided by the General Statutes of North Carolina.

"4. I hereby appoint J. A. Pritchett as my Executor to this my last Will and Testament and do revoke all other wills by me heretofore made.

"In witness whereof, I, Bruce Cobb, have hereunto set my hand and seal to this my last will and testament, this the 28 day of May, 1965.

BRUCE COBB (SEAL)"

Deceased was survived by a brother, A. J. Cobb, a niece, and three nephews. On 6 June 1966, the niece and nephews filed a caveat seeking to have the probate of the third item set aside upon the ground that, by reason of the mistake of the draftsman, this item did not express the true intent of the testator.

Answering, the propounders, the brother and the executor named in the instrument, admitted all the allegations of the caveat except the averment that Item 3 was not the will of testator. They alleged that Item 3 "and every part thereof are in truth and in fact the last will and testament of Bruce Cobb."

Upon the trial, after establishing the due execution of the instrument in accordance with the requirements of G.S. 31-3.3, propounders rested. As a witness for caveators, W. L. Cooke, attorney-at-law, testified that he had prepared the instrument in question. In the absence of the jury, he gave the following testimony: Bruce Cobb came to his office and instructed him to prepare a will for him which would give Joel Asher $500.00 and dispose of the rest of his property "as the statute provided." He also said that he wanted J. A. Pritchett and W. L. Cooke to "look after his estate." In drafting the will, Cooke erroneously gave the residuary estate to testator's next of kin instead of disposing of the property "as if he had died intestate." Mr. Cooke said:

"I advised him he was writing a will that would leave his property as if he had died intestate, except for the $500.00 to Mr. Asher, and appointing his Executors. . . . It was my error that the words were left off after 'next of kin as provided by General Statutes of North Carolina' the words 'as if he had died intestate.' "

Upon objection by propounders, the evidence of Mr. Cooke was excluded.

Caveators also offered in evidence two deeds, each dated 11 August 1965, in which propounders and caveators, purportedly as tenants in common, had conveyed two tracts of the Bruce Cobb lands. Upon propounders' objections, these deeds were likewise excluded from the evidence.

Obeying the court's peremptory instruction, the jury returned a verdict which established the paper writing propounded as the last will and testament of Bruce Cobb. From the judgment entered, caveators appealed. They assign as error the exclusion of their proffered evidence and the peremptory instruction.

*R. L. Coburn for caveator appellants.*
*Gillam & Gillam for propounder appellees.*

SHARP, J.   The words *next of kin* have a well defined legal significance. Unless the terms of the instrument show a contrary intent, in the construction of deeds and wills *next of kin* means *nearest of kin* — the nearest blood relations of the person designated. Without more, the term does not permit a representation. *McCain v. Womble,* 265 N.C. 640, 144 S.E. 2d 857; *Trust Co. v. Bass,* 265 N.C. 218, 231, 143 S.E. 2d 689, 698. Testator's brother, propounder A. J. Cobb, was his nearest blood kin at the time of his death. G.S. 29-5; G.S. 104 A-1. Therefore, if Item 3 of the will stands, he takes to the exclusion of the niece and nephews, since the instrument itself contains no suggestion that the words were used in other than the technical sense.

This case challenges the probate of Item 3 as a part of the will of Bruce Cobb; it involves no question of construction. The proffered deeds, however, are irrelevant to either inquiry. A will "must be interpreted from the language used by (testator) and not according to what others might think he meant or what he might have thought the words 'next of kin' meant. . . ." *McCain v. Womble, supra* at 644, 144 S.E. 2d at 859-60. By the same token, the joint execution of the deeds by caveators and propounders after the death of Bruce Cobb sheds no light on whether Item 3 was the will of testator. The excluded testimony of W.L. Cooke, however, does cast light on that question. If accepted by a jury, it would establish that Item 3 was not written in conformity with the instructions which testator gave his draftsman. The question presented, therefore, is this: Where a will has been read and duly executed by a mentally competent testator who has been subjected to no fraud or undue influence, can probate be revoked because the attorney who drafted it erroneously used language which produced a disposition of his property different from that intended by the testator and different from the one which the draftsman advised him would result? The answer to this question is No, and the reasons for it have been well stated in *In re Gluckman's Will,* 87 N.J. Eq. 638, 101 Atl. 295, L.R.A. 1918 D 742:

"Where a testator, in addition to complete testamentary mental capacity, is in full enjoyment of average physical and educational faculties, it would seem that, in the absence of fraud or of undue influence, a mistake, in order to defeat probate of his entire will, must in substance or effect really amount to one of identity of the instrument executed; as, for instance, where two sisters in one case, or a husband and wife in another, prepared their respective wills for simultaneous execution and through pure error one executed the other's and *vice versa.* (Citations omitted.)

"Short of this, however, or of something amounting in effect to the same thing, it is against sound public policy to permit a pure mistake to defeat the duly solemnized and completely competent testamentary act. It is more important that the probate of the wills of dead people be effectively shielded from the attacks of a multitude of fictitious mistakes than that it be purged of wills containing a few real ones. The latter a testator may, by due care, avoid in his lifetime. Against the former he would be helpless.

\*    \*    \*

". . . It is no new thing for provisions in wills to turn out, under the established rulings of the courts, to have a very different meaning from that which the testators themselves, under the honest but mistaken advice of counsel, thought they had when the wills were executed, but this has never been a ground for refusing probate." *Id.* at 641, 643-44, 101 Atl. at 296, 297, L.R.A. 1918 D at 745, 746.

In a case involving facts substantially identical to those with which we deal here, the Supreme Judicial Court of Massachusetts reached the same conclusion as did the New Jersey court. In *Mahoney v. Grainger,* 283 Mass. 189, 186 N.E. 86, the will had been read to the testatrix before she executed it by the attorney who drafted it. Its residuary clause directed that the balance of her estate be equally divided among her "heirs at law" living at the time of her death. Testatrix' instructions to her attorney had been to let her 25 first cousins "share it equally." At the time of her death, testatrix' closest relative was a maternal aunt, who — under Massachusetts law — was her heir at law. In holding that testimony as to the instructions which testator gave the draftsman was incompetent to prove her testamentary intention, Rugg, C.J., said:

"The fact that it was not in conformity to the instructions given to the draftsman who prepared it or that he made a mis-

take does not authorize a court to reform or alter it or remould it by amendments. The will must be construed as it came from the hands of the testatrix. * * * When the instrument has been proved and allowed as a will oral testimony as to the meaning and purpose of a testator in using language must be rigidly excluded. (Citations omitted.) It is only where testamentary language is not clear in its application to facts that evidence may be introduced as to the circumstances under which the testator used that language in order to throw light upon its meaning. Where no doubt exists as to the property bequeathed or the identity of the beneficiary there is no room for extrinsic evidence; the will must stand as written." *Id.* at 191-92, 186 N.E. at 87.

In *Harrison et als. vs. Morton & Brown, ex'rs., &c.,* 32 Tenn. (2 Swan) 461, caveators offered evidence that testator had instructed the draftsman of his will to provide for his grandchildren, who were the children of his two deceased daughters, equally with his own children. In holding that this evidence was properly excluded, the court said:

"If such proof were allowed, it is easy to see that any will might be altered, revoked or annulled by verbal evidence, which would be in conflict with our statutes of wills, and of frauds, and the rules of evidence founded in the experience and wisdom of ages, for the preservation of writings from alteration or change, by the proof of facts, resting in the frail memory of man. Such a rule would open a door for frauds and perjuries of the most alarming character, and render insecure all the rights of man." *Id.* at 469.

In *In Re Estate of Burt,* 122 Vt. 260, 169 A. 2d 32, 90 A.L.R. 2d 916, testator instructed his attorney to prepare a will which would disinherit his brother *W* and give his entire estate to *B*. In writing the will, the attorney — after devising the estate to *B* — provided that if *B* should predecease the testator, his estate should be divided according to the Vermont laws of descent. *B* survived testator and *W* contested the will upon several grounds, one being that it was not drawn in accordance with the instructions of the testator. The court, conceding that there was a variance between the legal effect and the *possible* results of the language used by the draftsman, and pointing out that the mistaken provisions never went into effect nor controlled the provisions of the will, said:

"Misunderstanding of the legal effect of the provisions of a will, whether resulting from erroneous legal advice or otherwise, will

not in the absence of fraud or of undue influence defeat probate. *In re Gluckman's Will*, 87 N.J. Eq. 638, 101 Atl. 295, L.R.A. 1918D, 742. As stated in *Leonard v. Stanton*, 93 N.H. 113, 36 A. 2d 271, 272, '. . . according to the prevailing view, if the testator knew and approved the contents of his will, it is immaterial that he mistook the legal effect of the language used or that he acted upon the mistaken advice of counsel; provided that advice was given in an honest belief that it was sound.' (Citations omitted.) What the testator has done, not what he meant but failed to do, is to be given effect." *Id.* at 267-68, 169 A. 2d at 37, 90 A.L.R. 2d at 923.

Mistakes of draftsmen have caused much litigation and varied attempts to correct them by deletion, reformation, and construction. See *Yates v. Cole*, 54 N.C. 110; *Hoover v. Roberts*, 144 Kan. 58, 58 P. 2d 83; *In re Mullin's Estate*, 128 So. 2d 617 (2d Dist. Ct. App. Fla., 1961). Different factual situations have produced varying, and sometimes conflicting, results. In consequence, annotators have preferred to discuss the results reached in cases involving different types of mistakes rather than to attempt the formulation of general rules. See Annotations, Effect of mistake of draftsman (other than testator) in drawing will, 90 A.L.R. 2d 924 (1963) and 16 B.R.C. 1006 (1931), where a variety of cases are collected. In 90 A.L.R. 2d at p. 939, however, this statement appears with reference to the factual situation here presented:

"It has generally been held or recognized that where the terms used in a will have well-defined and clearly understood legal meanings the draftsman's mistake as to the legal effect of the language used is to be regarded as a mistake of the testator and binding upon him. In other words, the will as written is regarded as expressing the testator's intention."

*Accord*, Annot., 16 B.R.C. 1006, 1011 (1931); 57 Am. Jur., Wills §§ 16, 375, 376, 875 (1948); Thompson on Wills § 136 (3d Ed., 1947); I Jarman on Wills 484-490 (1910). The above rule is also recognized in 1 Page, Wills § 13.6 (Bowe-Parker Rev., 1960):

"If the testator knows the contents of his will, the fact that he may not understand the technical meaning of the language which is employed, does not amount to mistake which the law will recognize.

\* \* \*

"If a will could be contested upon the ground that the testator did not have a perfect knowledge of the legal consequences

of all the provisions of his will, and a jury could concern itself with all of the subjective subtleties involved in determining just what the testator thought the law was, 'half the wills in the country' might be upset. * * *

. . .  "Cases opposed to the majority view stated above are very rare, but there are a few cases holding that a mistake as to the legal effect of a will may render it invalid. * * * Id. at 670, 671.

We deem the majority rule to be the only safe rule. In this case, we suggest no doubt whatever as to the truth of the proffered testimony of the draftsman, who has confessed error. More is at stake, however, than caveators' loss of the share which they have good reason to believe testator intended them to have in his estate. In the absence of fraud, duress, mistake in the identity of the instrument executed, or lack of mental capacity, public policy requires that a testator's will remain inviolate. It follows, therefore, that the evidence in question was properly excluded and the peremptory instruction correct.

The judgment of the court below is
Affirmed.