In re: WILL OF WILLIAM FARR

No. 51

(Filed 31 July 1970)

1. **Wills §§ 22, 23, 29— caveat proceeding — legal effect of revoked codicil — mental capacity of testator — instructions**

   In a caveat proceeding brought by testator's wife to challenge on grounds of mental incapacity and undue influence a codicil which revoked two articles of testator's will bequeathing property to the wife, the statute providing that a subsequent codicil executed by testator, which codicil revoked the codicil challenged by testator, did not have the legal effect of reinstating the revoked articles of the will, G.S. 31-5.8, *held* irrelevant to the issue of testator's mental capacity, the testator's failure to reinstate the revoked articles merely indicating an ignorance of the law; consequently, the trial court properly refused (1) to instruct the jury on the statute and (2) to permit caveator to argue the statute to the jury.

2. **Wills §§ 8, 29— reinstatement of bequest revoked by codicil**

   Where testator's codicil No. 5 revoked Articles Four and Thirteen of the original will, the Articles Four and Thirteen were not reinstated by codicil No. 6 which revoked codicil No. 5; the Articles could be

reinstated only by a reexecution of the will or by incorporating the previously revoked Articles by reference in codicil No. 6.

3. **Wills § 22—testamentary capacity — ignorance of technical statute**
   Mere ignorance of a technical statute relating to wills does not evidence a lack of testamentary capacity.

4. **Wills § 19— validity of will — testator's ignorance of law**
   In the absence of fraud, a testator's misunderstanding of the legal effect of a will or codicil does not ordinarily affect its validity.

5. **Wills § 28— construction of will — admissibility of evidence**
   Evidence cannot be heard to explain, add to, take from, modify, or contradict a will when its terms plainly indicate the testator's purpose as to persons or things mentioned in it.

6. **Wills § 24— caveat proceeding — instructions to jury on effect of their verdict**
   The jury in a caveat proceeding could not properly base its findings upon the legal consequences of its verdict, since the legal consequences could not be known prior to the jury's determination of the true facts.

7. **Wills § 24— caveat proceedings — speculative issues — instructions to jury**
   In a caveat to a will, the jurors should not be deflected from their functions of ascertaining the facts from the evidence by speculations as to whether the decedent's estate would be distributed more equitably under the instrument propounded or according to the laws of intestate succession.

8. **Trial § 11— unwarranted remarks of counsel**
   When the remarks of counsel are not warranted by either the evidence or the law, or are calculated to mislead or prejudice the jury, it is the duty of the judge to interfere. G.S. 84-14.

ON *certiorari* to review the decision of the Court of Appeals reported in 7 N.C. App. 250.

This proceeding is a caveat to an instrument, executed on 22 February 1966, which was probated as the fifth codicil to the will of William Farr (Farr), who died 15 May 1966, two months before his ninety-first birthday. Seven documents, which purported to be his will and six codicils thereto, were probated in common form on 24 May 1966. Caveator is Farr's widow, Alice M. Farr, whom he married 27 November 1947. Propounders are Wachovia Bank and Trust Company (the executor named in the will) and the children of Farr by his first marriage.

In the will, executed 17 August 1961, Farr made specific bequests to his wife and to each of his eight children. By Article

Four he bequeathed to his wife the sum of $10,000.00, one-half of his books, and all his household furniture and personal effects not otherwise specifically devised. He also directed his executor to pay any indebtedness against property held by him and his wife as tenants by the entireties. By Article Thirteen he bequeathed and devised 40% of his residuary estate to his wife, 20% to his son, William, and 10% to each of his four daughters.

On the day he executed his will, Farr also executed the first codicil to it in order to include an omitted legacy. Thereafter, on 21 November 1963, 28 September 1964, and 18 March 1965, he executed codicils in which he altered, revoked, or made additional bequests to children or grandchildren. On 22 February 1966, while a patient in the hospital, Farr formally executed the instrument in question, which was prepared by his attorney and entitled "Codicil." It purported to revoke Articles Four and Thirteen of the will made 17 August 1961 and to substitute new articles therefor. In new Article Four, Farr omitted the $10,000.00 legacy to Alice Farr and bequeathed his books, household furniture, and personal effects to his son, William, who was directed to divide and deliver one-third of the property to Alice Farr and the balance to four named daughters. By new Article Thirteen, Farr bequeathed and devised 20% of his residuary estate to Alice Farr, 16% to his son, William, and 16% to each of four named daughters.

On 15 March 1966, approximately three weeks after he went home from the hospital, Farr sent for his former secretary and dictated to her the sixth (and last) codicil to his will. In his presence and using his typewriter, she typed the dictation at the bottom of the page on which the fifth codicil had been written. The following evening she and two others witnessed Farr's execution of the instrument. In it Farr recited that he found errors in the codicil of 22 February 1966 "that would cause much trouble and loss to correct"; that he had in mind his promise to his son, William, to make no changes in that codicil but, considering the best interest of his wife and eight children, he did "revoke and cancel the attached codicil dated February 22, 1966."

On 7 August 1968, Alice M. Farr filed a caveat to the fifth codicil. She alleged that Farr lacked testamentary capacity when he executed the instrument and that its execution was procured by the undue influence of two of his children, William Farr II,

---

In re Will of Farr

---

and Frances Farr Plunkett. The action was tried at the 20 January 1969 Civil Session of the Superior Court of Buncombe County by Snepp, J., and a jury. Propounders and caveator offered evidence tending to establish their respective contentions.

In apt time caveator requested the court to instruct the jury as follows: "G.S. 31-5.8 provides: 'No will or any part thereof, which shall be in any manner revoked can be revived otherwise than by a reexecution thereof, or by the execution of another will in which the revoked will or part thereof is incorporated by reference.' Therefore the court instructs you that the execution of the last paper writing dated March 16, 1966, did not have the legal effect of reviving paragraphs Four and Thirteen of the paper writing dated August 17, 1961." This requested instruction was refused and caveator excepted.

During his argument to the jury, counsel for caveator proposed to read the provisions of G.S. 31-5.8 and to argue in connection therewith that Farr's failure to revive Articles Four and Thirteen of his original will by incorporating them in the codicil of 16 March 1966 was a circumstance bearing upon his mental capacity on 22 February 1966. Propounder objected to any reference by caveator's attorney to G.S. 31-5.8. The objection was sustained, and the court instructed the jurors that the legal effect of their verdict upon the distribution of Farr's estate was no concern of theirs. Caveator again excepted.

The verdict established (1) that the will and the six codicils propounded were executed in accordance with legal formalities; (2) that Farr had testamentary capacity when he executed the codicil dated 22 February 1966 and its execution was not procured by undue influence; and (3) that the seven documents propounded for probate constituted Farr's last will and testament.

From the judgment entered on the verdict caveator appealed to the Court of Appeals. She assigned as error, *inter alia*, the refusal of the trial judge (1) to instruct the jury as requested and (2) to permit her counsel, in his argument to the jury, to discuss the legal effect of G.S. 31-5.8 upon the distribution of Farr's estate and to argue that his failure to take into account the provisions of this statute was indicative of a lack of testamentary capacity on February 22, 1966.

The Court of Appeals held that G.S. 31-5.8 was not relevant to the issues which "related only to the formal execution of the will and to the physical and mental condition of Mr. Farr and to the influences which might have been exerted upon him to make the codicil dated 22 February 1966"; that "[i]t was not necessary for the jury to be instructed as to the legal effect of the codicil dated 16 March 1966; and that Judge Snepp had correctly refused to instruct the jury that the codicil dated 16 March 1966 did not revive Articles Four and Thirteen of the original will. Then, after noting caveator's argument that Farr was ignorant of the provisions of G.S. 31-5.8 when he executed the codicil dated 16 March 1966 and that his ignorance "was some evidence of a lack of mental capacity to execute the codicil dated 22 February 1966," the Court of Appeals held: ". . . [I]t was error for the trial judge to prevent counsel for the appellant from arguing G.S. 31-5.8 to the jury. . . . [T]he caveator may present to the jury evidence of events which have a bearing on the mental capacity of the testator, both before and after the instrument is executed as long as it tends to shed light upon the mental capacity of the testator at the time he made the instrument."

The decision of the Court of Appeals was that caveator was entitled to a new trial. Propounders petitioned this Court for certiorari, and the petition was allowed.

*Bennett, Kelly & Long and Hendon & Carson for caveator-appellee.*

*Landon Roberts; Van Winkle, Buck, Wall, Starnes and Hyde; and Williams, Morris and Golding for propounder-appellants.*

SHARP, J.

[1]   The question presented is whether the application of G.S. 31-5.8 to instruments constituting the will of Farr, and its effect upon the distribution of his estate, were relevant to the issue of his mental capacity at the time he executed the fifth codicil. The Court of Appeals held that G.S. 31-5.8 was "not relevant to the theory of the trial" and that Judge Snepp was correct when he instructed the jurors that they were not concerned with the legal effect of their verdict and refused to instruct that the sixth codicil did not revive Articles Four and Thirteen of the original will. Yet, at the same time, the Court of Appeals held that the trial judge committed error entitling

caveator to a new trial when he prevented her counsel from arguing G.S. 31-5.8 to the jury. As counsel for propounders and caveator all agree, these two rulings are fundamentally inconsistent. Either the legal effect of the statute was a matter for the jury's consideration under proper instructions from the court or caveator's attorney was not entitled to argue its effect to the jury.

[2]   The consequence of Farr's fifth codicil, executed 22 February 1966, was to revoke Articles Four and Thirteen of the original will and to substitute different provisions for them. The effect of the sixth codicil was to revoke the fifth. However, Articles Four and Thirteen of the will were not reinstated by the revocation of codicil No. 5 which had nullified them. Under G.S. 31-5.8, Farr could have revived Articles Four and Thirteen only by a reexecution of the will or by incorporating the previously revoked articles by reference or restatement in the sixth codicil. 1 Wiggins, Wills and Administration of Estates in North Carolina § 94 (1964); 31 N.C.L. Rev. 448 (1953). "Under statutes making reexecution essential to revival, the mere revocation of a subsequent will does not revive a prior will, even though the testator so intended. . . ." 95 C.J.S. *Wills* § 301(3) (1957). *Accord, Osborn v. Rochester Trust and Safe Deposit Company,* 209 N.Y. 54, 102 N.E. 571; *In Re* Levin's Will, 208 N.Y.S. 2d 731; *In Re* Moffat's Estate, 158 N.Y.S. 2d 975. *See* Estate of Eberhardt, 1 Wis. 2d 439, 85 N.W. 2d 483; *Poindexter v. Jones,* 200 Va. 372, 106 S.E. 2d 144; Annot., 162 A.L.R. 1076, 28 A.L.R. 921.

The result of codicils five and six is that Farr's widow takes nothing under his will and he died intestate as to his residuary estate, of which she is entitled to receive one-third. G.S. 29-14(2). Had the jury invalidated codicil No. 5 upon either of the grounds alleged caveator would have taken under Articles Four and Thirteen of the will. She contends that G.S. 84-14 authorized her counsel to argue to the jury "the whole case as well of law as of fact," and that the jurors should have been informed of the consequences of their verdict to her if it validated the fifth codicil. Specifically, she asserts that her counsel should have been allowed to argue (1) that Farr's will and codicils show that he did not intend to die intestate as to any of his property and that he had intended to make a specific provision for her; and (2) that his "lack of capacity to do what

he obviously intended to do on March 16, 1966" was relevant upon the question of his mental capacity on 22 February 1966, the day he executed the fifth codicil. These contentions cannot be sustained.

[3]    It would be an astonishing assertion—fraught with danger to members of the legal profession as well as the laity—were we to hold that mere ignorance of a technical statute relating to wills evidenced a lack of testamentary capacity. We do not so hold.

[1, 4]    There is in the transcript no evidence tending to establish Farr's knowledge or lack of knowledge of the existence or effect of G.S. 31-5.8 at the time he executed his last two codicils. However, he was not a lawyer and, from the circumstances attendant, it is reasonable to infer that when he executed the sixth codicil he intended to reinstate original Articles Four and Thirteen of his will, and that he thought he had done so. The will and all previous codicils to it had been prepared by Farr's attorney; the sixth he dictated himself. A layman, ignorant of G.S. 31-5.8, might be expected to assume that if he revoked codicil No. 5 (which had canceled two specific provisions of his will) the revocation would revive those previously revoked provisions. *See Marsh v. Marsh,* 48 N.C. 77; *Wiggins, supra,* § 94 at p. 260. Farr's failure to accomplish this purpose by the means he employed (the sixth codicil) indicates not a lack of mental capacity but ignorance of the law and a mistaken belief as to the legal consequences of his act. However, in the absence of fraud, a testator's misunderstanding of the legal effect of a will or codicil will not ordinarily affect its validity. *In Re* Will of Cobb, 271 N.C. 307, 156 S.E. 2d 285. "To recognize the testator's misunderstanding of the legal provisions of his will as a sufficient basis for contest would be to subject a majority of wills to the possibility of attack by disgruntled and disappointed heirs." 1 *Wiggins, supra,* § 67. *Accord,* 1 Bowe-Parker: Page on Wills § 13.6 (1960).

The words which Farr used in his last two codicils are clear, concise, and create no ambiguity. They leave "no doubt as to what he meant, looking to the plain legal import of the terms he employed to express his purpose in the will. . . .

[5]    "Evidence cannot be heard to explain, add to, take from, modify, or contradict a will when its terms plainly indicate the

---

In re Will of Farr

---

testator's purpose as to persons or things mentioned in it. . . . Any other rule would place it practically within the power of interested persons to *make* a testator's will, so as to meet the convenience and wishes of those who might claim to take under it." *McDaniel v. King,* 90 N.C. 597, 602.

[6, 7] Whether the instruments propounded — particularly codicil No. 5—constituted the will of Farr depended upon the jury's answers to the specific questions posed by the issues. The jury could not properly base its findings upon the legal consequences of its verdict, for the legal consequences of the verdict could not be known prior to the jury's determination of the true facts. We have held that the jury in a criminal case is not entitled to know the possible punishment for the various crimes included in the bill of indictment upon which a defendant is being tried. *State v. Rhodes,* 275 N.C. 584, 169 S.E. 2d 846. The quantum of punishment which a guilty verdict will authorize the judge to impose is totally irrelevant to the issue of a defendant's guilt, and the minds of the jurors should not be diverted from the question of guilt or influenced by speculation as to the amount of punishment a defendant could or should receive. Similarly, in a caveat to a will, the jurors should not be deflected from their function of ascertaining the facts from the evidence by speculations as to whether the decedent's estate would be distributed more equitably under the instrument propounded or according to the laws of intestate succession.

[8] G.S. 84-14, which provides that "[i]n jury trials the whole case as well of law as of fact may be argued to the jury," does not authorize counsel to argue law which is not applicable to the issues, for such arguments "could only lead to confusion in the minds of the jury." *State v. Crisp,* 244 N.C. 407, 412, 94 S.E. 2d 402, 406. When the remarks of counsel are not warranted by either the evidence or the law, or are calculated to mislead or prejudice the jury, it is the duty of the judge to interfere. *Jenkins v. Hines Co.,* 264 N.C. 83, 141 S.E. 2d 1; *State v. Howley,* 220 N.C. 113, 16 S.E. 2d 705.

We hold that Judge Snepp ruled correctly, both when he declined to instruct the jury as to the provisions of G.S. 31-5.8 and when he refused to permit counsel for caveator to argue the statute to the jury. The decision of the Court of Appeals that caveator is entitled to a new trial is

Reversed.