687 A.2d 783

IN THE MATTER OF THE ESTATE OF KATEY LAGRECA,
A/K/A ROSE LAGRECA, DECEASED.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1997—Decided January 28, 1997.

68

Before Judges PRESSLER, STERN and WECKER.

*Joan Atkins Porro,* for appellants/cross-respondents John R. and Nancy Lagreca (*Porro and Porro,* Attorneys; *Ms. Porro,* on the brief).

*Kenneth C. Dolecki,* for respondent/cross-appellant Diane Lagreca.

The opinion of the court was delivered by

WECKER, J.S.C. (temporarily assigned).

This is an appeal and cross-appeal from a Chancery Division judgment resolving a dispute between children of Katey Lagreca regarding the disposition of her residuary estate and the appointment of an executor. The issues raised by this appeal are whether decedent's execution of a codicil to her will revokes the inconsistent provisions of the prior will and if so, whether her destruction of the codicil revives the original will provisions. The Chancery Division judge concluded that the execution of the codicil revoked the inconsistent will provisions, and those provisions were not revived by the destruction of the codicil because the decedent did not observe the formalities required by *N.J.S.A.* 3B:3–15. We affirm substantially for the reasons set forth in Judge O'Halloran's well-reasoned oral opinion.

These facts are undisputed. Katey Lagreca, the widowed mother of John, Anthony and Diane, executed a valid will on July 14, 1982, naming her son John as sole executor. She provided several nominal, specific bequests to her two other children, Anthony and Diane, and to several grandchildren. Katey left the entire residuary estate to John. On May 5, 1987 Katey executed a valid codicil naming Diane as sole executor and devising her residuary estate

to John, Anthony and Diane in equal shares. Katey Lagreca died on September 18, 1987.

On January 11, 1988 John submitted the 1982 will for probate, and letters testamentary were issued to him. On June 11, 1993 Diane filed a verified complaint seeking probate of a copy of her mother's 1987 codicil, the discharge of John as executor and her own appointment in that capacity. After a four-day trial, Judge O'Halloran rendered an oral decision expressing doubt about the credibility of each of the parties, but finding that the decedent was competent to execute both the will and the codicil, that she destroyed the original codicil with the intention of revoking its provisions, and that she neither re-executed the original will nor executed a new codicil expressing an intent to revive the earlier provisions. The judge therefore ordered the residuary estate to be distributed equally among the three children of Katey Lagreca, in accordance with the intestacy statute, *N.J.S.A.* 3B:5–4. The judgment discharged John as executor and permitted any of the three children to apply for appointment as administrator pursuant to *N.J.S.A.* 3B:10–2.

Since the trial judge had the opportunity to weigh the credibility of all the evidence, *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.2d* 753 (1965), his clearly expressed findings of fact are entitled to deference. *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 484, 323 *A.2d* 495 (1974). There is sufficient credible evidence in the record to support those findings.

The trial judge concluded as follows with respect to the legal issues raised by this appeal:

I conclude that at the time decedent executed her codicil she revoked the inconsistent paragraphs 9 and 12 of her Will. Those paragraphs in the Will left the residuary estate to defendant John and nominated him executor, whereas the codicil left the residue to the 3 children equally and named plaintiff Diane executrix. Revocation was contemporaneous at the time of execution of the codicil. It did not await the time of decedent's death.

When decedent later revoked the codicil did paragraphs 9 and 12 of the Will revive?

I find that under statutory and case law the answer to this question must be no. The statute is clear. 3B:3–15 says that a revoked Will shall not be revived except

by re-execution or by a duly executed codicil expressing an intent to revive it. I understand the logic of defendant John's argument that since decedent revoked the codicil and kept the Will she must have intended that the old plan go into effect with the residue to him otherwise revocation of the codicil which left the residue to the 3 children would have been for naught since the effect of revocation without revival of the Will is to leave the residue to the 3 children by intestacy. But in the area of Wills, the Court must scrupulously follow statutory law which was enacted to prevent fraud and decedent simply did not re-execute her Will or execute a codicil to express an intent to revive it and therefore did not comply with the statute. It is the duty of the Court to ascertain the intent of the testatrix but this must be done in conformity with the controlling statutes.

The applicable statutes are *N.J.S.A.* 3B:3–13 and *N.J.S.A.* 3B:3–15. Section 13 provides in pertinent part:

A will or any part thereof is revoked:

a. By a subsequent will which revokes the former will or part expressly or by inconsistency....

With exceptions not relevant here, Section 15 provides:

[A] revoked will or codicil shall not be revived except by reexecution or by a duly executed codicil expressing an intention to revive it.

■ On appeal, John argues that because his mother never executed a subsequent will, and because no valid codicil existed as of the date of her death, none of the provisions of the original will were ever revoked. He further argues that if the execution of the codicil did revoke any provision of the earlier will, that provision was revived when the codicil itself was revoked. We reject both arguments. John's reliance on *Heise v. Earle*, 134 *N.J. Eq.* 393, 35 *A.2d* 880 (E. & A.1944), is misplaced. That case, which predates the enactment of a prior version of *N.J.S.A.* 3B:3–15, held that the execution of a later will revoked an earlier will, and the subsequent revocation of the later will did not revive the earlier will. The Court of Errors and Appeals reasoned that in the absence of a statute expressly prohibiting such a revival, the proven intention of the testator would prevail. The Court declined to apply a presumption of revival and found insufficient proof of the testator's intent. The Court noted, 134 *N.J.Eq.* at 404, 35 *A.2d* 880:

In probate matters generally it is the duty of the court to ascertain the intention of the testator. But this must be done in conformity with the controlling statutes. The intention of the legislature may not be disregarded.

*N.J.S.A.* 3B:3–15 is derived from the English "Statute of Victoria," which provided:

> no will or codicil, or any part thereof, which shall be in any manner revoked, shall be revived otherwise than by the reexecution thereof or by a codicil executed in a manner hereinbefore required, and showing an intention to revive the same.
> 7 . Wm. IV & 1 Vic., c. 26 § 22

In interpreting that statute, English courts have held that the revocation of a prior testamentary instrument by a subsequent instrument occurs at the time the later instrument is properly executed. *See* 2 Bowe–Parker: *Page on Wills* § 21.53, at 437–438 (3rd Ed.1960). American jurisdictions that have adopted the substance of the Statute of Victoria, *i.e.,* statutes similar to *N.J.S.A.* 3B:3-15, have so held. 2 *Page on Wills* § 21.55, at 444.

The question whether the revocation of the revoking instrument revives the original instrument has not been addressed by any New Jersey court since the enactment of *N.J.S.A.* 3B:3-15. Several states with similar statutes have ruled as we do today. *E.g., Parker v. Mobley,* 264 *Ark.* 805, 577 *S.W.*2d 583 (1979); *In re Will of Farr,* 277 *N.C.* 86, 175 *S.E.*2d 578 (1970); *Driver v. Sheffield,* 211 *Ga.* 316, 85 *S.E.*2d 766 (1955).

We concur in the trial judge's conclusion that "in the area of wills, the Court must scrupulously follow statutory law." *See In re Estate of Peters,* 107 *N.J.* 263, 281, 526 *A.*2d 1005 (1987). The formalities of the statute were neither observed nor attempted. We appreciate that our holding results in partial intestacy and that the resulting distribution among decedent's three children is the very distribution provided by the destroyed codicil. John argues that that cannot have been his mother's intent when she tore up the codicil. We do not reach that question because, as the Supreme Court has said,

> the doctrine of probable intent is available only to interpret, but not to validate, a will. . . . Probable intent comes into play only after a will is found to be valid.
> [*In re Will of Smith,* 108 *N.J.* 257, 265, 528 *A.*2d 918 (1987).] (citations omitted)

The similarity between the revoked codicil and intestate distribution is fortuitous. The applicable rule of law cannot be modified because of the result in one case.

■ We are mindful of the strong presumption against partial intestacy. *See In Re Estate of Burke,* 48 *N.J.* 50, 65, 222 *A.2d* 273 (1966); *In re Will of Maliniak,* 199 *N.J.Super.* 490, 493, 489 *A.2d* 1229 (App.Div.), *certif. denied,* 101 *N.J.* 267, 501 *A.2d* 935 (1985). However, that presumption must give way to the dictate of our Supreme Court that "strict, if not literal, adherence to statutory requirements is required in order to validate a will. . . ." *In re Estate of Peters, supra,* 107 *N.J.* at 281, 526 *A.2d* 1005. Furthermore, it would be illogical to permit the common-law presumption against intestacy to negate one of the "strict . . . statutory requirements" for executing a valid testamentary instrument. The statute itself creates the intestacy for failure to comply with its express requirements.

We affirm the judgment of the Chancery Division in all respects. That judgment results in partial intestacy of Katey's estate with respect to the distribution of the residuary estate and to the naming of an executor. Diane's demands for compensatory and punitive damages and for her counsel fees to be paid by John were properly denied.