NETTIE L. ELAM, Appellant, v. EDITH PHARISS et al.

Division One, July 11, 1921.

1. **WILL CONTEST:** Substituted Pages: Finding of Jury Conclusive. After the will was written it was submited to the testratrix, who said it was what she wanted. Two neighbor women were called in and testatrix showed them the instrument, told them it was her will, expressed satisfaction with it and asked them to witness it, and this they did. On cross-examination of these witnesses it was developed that they were unable to identify positively sheets one and two of the instrument, and were able so

289 Mo.—14

to identify only sheet three on which their signatures appeared; but the draftsman testified he was present when the will was signed and that it was then in the exact condition in which it was when put in evidence at the trial, and there was no evidence of fraud, but there was ample evidence, direct and otherwise, that the instrument was her geuine will. *Held*, that there was no ground for so much as a suspicion that the will signed by testatrix was not the same document put in evidence at the trial, but the question being nevertheless submitted to the jury the finding sustaining the will is conclusive on appeal.

2. ———: **Mistake: Legal Advice As to Husband's Curtesy.** Testatrix gave written directions for the contents of her will, and after it was writen and submitted to her she caused it to be rewritten in order to correct a minor error. Being re-written and submitted to her, she read it and said it contained the exact provisions she desired to be incorporated in it, and it was then signed and witnessed, and there is no real contention that she did not know its contents. There was no mental, physical or educational impediment to her understanding it, and there was no evidence of fraud, coercion or undue influence. Giving the fee in remainder to two children, it devised to her husband a life estate in her real estate, in lieu of all his "other rights, interests or claims" in her estate, and provided that out of the income of the property he should use $150 a year, until $1000 should be so used, to purchase a home for another child, the contestant. The draftsman testified that the matter of the husband's rights were discussed, and that he advised her.that a surviving husband was entitled to a life estate in one-half of his wife's property. *Held*, first, there being no evidence to show how she held the property devised and it being the law that property may be so conveyed that the husband's curtesy is excluded and the wife's estate one of which she can dispose by will, the instrument cannot be held not to be her will on the ground that her husband was entitled by the curtesy to a life estate in her lands, and that the attempt to impose a charge upon it in favor of contestant was therefore unavailing, and testatrix received and acted upon unsound advice concerning her husband's marital rights in her lands, for in order to so hold it would be necessary to assume that her title was so taken that his curtesy was not excluded; and, *second*, even though the assumption were permissible, the mistake was not such as would authorize a setting aside of the will.

3. ———: **Mistake As to Legal Effect of Provisions.** A mistake of law in the mind of the testator, who is of sound mind and free from undue influence, or a mistake as to the legal effect of provisions contained in the will, will not invalidate the will. Where

testatrix was advised by an attorney that her surviving husband would have a curtesy equal to a life estate in one-half of her property, and, in lieu of all his "other rights, interests and claims," she devised to him a life estate charged with the obligation that he should pay to one of her daughters one thousand dollars, such advice, even though erroneous, and such provision in the will, even though she may not have understood its legal import, are not sufficient for refusing probate to her will.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins*, Judge.

AFFIRMED.

*Oscar B. Elam* for appellant. ·

(1)   The power of a married woman to make a will devising land is not absolute and unconditional. It is "subject to the rights of the husband, if any, to his curtesy therein." Sec. 536, R. S. 1909. (2)   Presumptions as to facts always take flight upon the appearance of the facts themselves. Brown v. Brown, 237 Mo. 668. (3)   "Gross inequality in the dispositions of the property, where no reason for it is suggested, either in the will, or otherwise, may change the burden, and require explanation on the part of those who support the will to induce the belief that it was the free and deliberate offspring of a rational, self-poised, and clearly disposing mind." 1 Redfield on Wills, 537, 516; Lynch v. Clements, 24 N. J. Eq. 431; Gay v. Gillian, 92 Mo. 250, 264.   (4)   "The fact that the will in question displays an entire change from former intentions is strong evidence of undue influence in its procurement." 1 Jarmon on Wills (5 Ed.), p. 139.   (5)   A will procured by lying is no less invalid than a will procured by violence. Smith v. DuBoise, 78 Ga. 413; In re Budlong's Will, 126 N. Y. 423, 7 N. Y. Supp. 289.   (6)   If decedent did not know the contents of the will   the court will direct a verdict rejecting the will. Bradford v. Blossom, 207 Mo. 228. (7)   The rule that "a mistake of law, pure and simple,

is not an adequate ground for relief is confined to mistakes of the general rules of law; it has no application to the mistakes of persons as to their own private legal rights and interests.'' 1 Jones' Commentaries on Evidence, p. 151, sec. 24 (21); Burton v. Haden, 108 Va. 51, 15 L. R. A. (N. S.) 1038. (8) A mere capacity to understand the will is not under the pleadings and circumstances of this case all that was required of the testatrix; under the pleadings in this case the burden was upon proponents to show that testatrix did in fact understand ''the meaning of the instrument'' executed as a will. Carlson v. Lafgran, 250 Mo. 527, 533; Cowan v. Shaver, 197 Mo. 203, 212. (9) If an attending witness attested only one sheet of paper, believing at the time that the whole will was contained on that sheet of paper, and was not advised or informed that other sheets of paper contained other portions of the will, or even if so informed and the other sheets were not within sight of the attesting witnesses, the attestation is not good under the statute. The identification is not complete. The statute is mandatory. McGee v. Porter, 14 Mo. 611, 55 Am. Dec. 129; St. Louis Hospital Assn. v. Williams, 19 Mo. 617; Northcutt v. Northcutt, 20 Mo. 268; Simpson v. Simpson, 27 Mo. 288; Catlett v. Catlett, 55 Mo. 341; Gordon v. Burris, 141 Mo. 602; Chafee v. Baptist Convention, 10 Paige (28 Chancery) 85; Cabett on Appeal, 8 Watts & Seargeant, 21, 40 Am. Dec. 225. (10) The motion notwithstanding the verdict must be sustained in the case at bar on the pleadings and the evidence. Dezell v. Casualty Company, 176 Mo. 253, 293; 2 Bouvier's Law Dictionary (Rawle's Third Revision) p. 1719. (11) If proponents themselves show that the paper offered is not what the testator was made to believe it was when he signed it, it cannot be adjudged to be his will, even in the absence of any averments to that effect in the petition of the contestants. Cowan v. Shaver, 197 Mo. 203, 212. A contest is in the nature of an appeal from the probate court, and when instituted by a

party in interest vacates the interlocutory judgment (of the probate court). . . . The institution of such contest imposes upon the circuit court the duty of determining the question of will or no will." State ex rel. v. McQuillin, 246 Mo. 688; Dickey v. Malechi, 6 Mo. 177; Benoist v. Murrin, 48 Mo. 48; Cash v. Lust, 142 Mo. 637; Hogan v. Hinchey, 195 Mo. 527; Teckenbrock v. McLaughlin, 209 Mo. 533. (12) The burden of proof is upon the proponents of the will. State ex rel. v. McQuillin, 246 Mo. 674, 689; Benoist v. Murrin, 58 Mo. 322; Norton v. Paxton, 110 Mo. 461; Teckenbrock v. McLaughlin, 209 Mo. 533.

*H. H. Bloss* for respondents.

(1) The validity or effect of the provisions of a will cannot be determined in a will contest, but the only issue is whether the will sought to be established was the will of the deceased. Cox v. Cox, 101 Mo. 168; Gordon v. Burris, 141 Mo. 602; Tingley v. Cowgill, 48 Mo. 291; Lilly v. Tobbein, 103 Mo. 477. (2) The only burden that rested on the proponents of this will was to prove its due execution, proper age, sound mind, and all this was abundantly done. Card v. Gabil, 120 Mo. 283; Maddox v. Maddox, 114 Mo. 35. (3) It is not necessary that the witnesses attest every sheet of a will or that it shall be shown to them. It is sufficient if all the sheets were in the room at the time of the execution and the attestation, and in the absence of proof to the contrary such is the presumption, and sheets which are bound together and constitute the will after the testator is dead are presumed to have been bound together at the time of attestation. 30 Amer. & Eng. Ency. Law (2 Ed.), 603. (4) The petition in this case charged that the beneficiaries of the will unduly influenced the testatrix in the execution thereof plaintiff is concluded by these statements and her proof should be confined to the persons charged, and she is not now permitted to urge on her part that she was misled by her attorney as to

her husband's rights by curtesy. Jackson v. Hordin, 83 Mo. 175. (5) A will contest being a law action the finding by the jury based on sufficient evidence as to due execution, mental capacity, etc., is conclusive on the appellate court. Butler v. Assn., 73 Mo. 242; Benoist v. Murrin, 58 Mo. 307. (6) If the husband takes under this will, he waives his curtesy rights and there is no allegation in the petition that he has not accepted the provisions of the will, which he is by answer and other- wise trying to sustain; hence, no one is injured and the property is being distributed exactly as the deceased wanted it. Caster v. Gray, 159 Mo. 588.

JAMES T. BLAIR, J.—This is a will contest. There was a verdict upholding the will, and judgment was rendered accordingly. Appellant and respondents Na- thaniel Merle Wheat and Edith Phariss are the children and heirs at law of testatrix. Respondent N. M. Wheat is her surviving husband, and he and respondent Elliott are the executors under the will.

By the will testatrix devised (1) to her son three lots and parts of two other lots in Aurora and a one-half interest in a tract near the city—all subject to a life estate in N. M. Wheat, the husband; (2) to her daughter Edith Phariss one parcel in fee simple, and a remainder, subject to a life estate in N. M. Wheat, in three lots or parcels in Aurora and in a one-half interest in the above- mentioned tract near that city; (3) to N. M. Wheat, sur- viving husband, a life estate in all the property described in the devise to the son and in all that described in the devise to the daughter, Edith Phariss, except one-half of one lot. The will provides that the bequest to the hus- band is made in lieu of all his "other rights, interests or claims" in the estate of testatrix, and then provides that out of the income of the property devised to him for life he shall use $150 per year, until $1,000 shall have been so used, to purchase a home for appellant; that the home so provided shall be held by trustees and shall be

so held until after the death of the then husband of appellant, and upon his death the title shall be conveyed to appellant, if living; and if she shall have predeceased her husband, then to appellant's heirs, "excluding her said husband, however." The residue of the estate was devised to the son and Edith Phariss in equal shares. A clause providing for the exclusion of any devisee who might contest the will is added.

The petition sets out the will, and then, alternatively and on information and belief, alleges fraud, duress, undue influence and mistake. These allegations need not be set out in full. It will suffice to say that they are. sufficiently broad that no contention made in appellant's brief need be denied consideration because of want of a proper allegation in the petition. An answer and reply were filed.

Proponents offered evidence tending to show that early in October, 1916, testatrix prepared memoranda showing the disposition she desired to make of her estate and took them to an attorney for the purpose of having him draw her will. She discussed the matter with him and left the notes with him for his guidance. He prepared the will according to the directions, and submitted the document to testatrix. She required him to make a change or two, and the will was written and returned to testatrix. At this time the draftsman read it over to her. He testified it contained exactly what testatrix directed to be put in it; that she stated the will as written "was what she wanted." Two neighbor women were called in and testatrix showed them the instrument, told them it was her will, expressed her satisfaction with it and asked them to witness it. This they did. The only evidence pertaining to the testamentary capacity of testatrix is to the effect that her mental condition was good. There is no evidence tending to show that any of the respondents intermeddled in any way with the preparation of the will, or that any one of them was present when it was signed. There was no evidence to support the allegations of fraud, coercion or undue influence.

In the cross-examination of the witnesses to the will it was developed that they were unable to identify positively sheets one and two of the instrument and were able so to identify only sheet three upon which their signatures appeared. Some of the answers of these witnesses are made the basis of a contention that other sheets have been substituted for original sheets one and two. The draftsman testified he was present when the will was signed and that it was then in the exact condition in which it was when put in evidence in this case. This witness also testified that the matter of a husband's rights was discussed. He said he advised testatrix that a surviving husband was entitled to a life interest in one-half of his wife's property. There was no evidence to show by what title testatrix held the property she devised. After the will was executed testatrix took charge of it. She died July 22, 1916, and the will was duly probated.

I. The contention that the will signed by testatrix and witnessed at her request was not the same document as that which was put in evidence in this case has for its foundation nothing more than a strained construction of an answer here and there in the cross-examination of a witness or two. Properly understood these answers do not justify the construction appellant gives them. There is no evidence of fraud. There was ample evidence, direct and other, that the document in evidence is the genuine will. There is, in fact, no ground for so much as a suspicion that it was not. Nevertheless, the question was submitted to the jury and the finding thereon was adverse to appellant, and is conclusive here.

.Substituted Pages.

II. Authorities are cited which bear upon undue influence, confidential relations and the burden of proof resulting therefrom, and the probative effect of a radical change in testamentary intention. There is an entire absence of any evidence

Undue Influence.

which calls for the application of the principles of these decisions.

III.   Testatrix knew the contents of this will.   Counsel does not really contend to the contrary.   Testatrix gave written directions for its preparation.   It was drafted and submitted to her.   She caused it to be re-written in order to correct a minor error.   It was re-submitted and read to her.   It contained the exact provision she required to be incorporated in it.   There was no mental, physical or educational obstacle to her understanding it.   Her mind was sound.   She was not blind or otherwise so afflicted that she could not read. The will was written in her own language.   She approved it as written.   There was no evidence of fraud, coercion or undue influence.   It is now contended that though testatrix knew what the will contained and that it contained the provisions she directed should be put into it, yet it must be held not her will because she received unsound advice concerning the rights of a surviving husband in the realty of his wife.   The bequest of $150 per annum to be used for a home for appellant is to come out of the income from the life estate given the husband.   It is said this bequest is an ineffective bequest; that the husband of testatrix was entitled by the curtesy to a life estate in the realty of his wife and that the attempt to impose a charge upon it in favor of appellant is unavailing. From this it is argued that appellant gets nothing under the will; that the will shows an intent to give her a home; that the error grew out of the erroneous advice testatrix received and this constitutes a mistake which defeats the whole will.   The record does not so much as suggest bad faith on the part of the draftsman.   The advice he gave was given in an honest belief that it was sound—a belief which the record shows was adhered to when the draftsman testified on the trial of this case.

(1)   In the first place the evidence does not show how testatrix held the land she devised.   Property may

be so conveyed that the husband's curtesy is excluded and yet the wife's estate may be one of which she can dispose by will. [Jamison v. Zausch, 227 Mo. l. c. 412, et seq.; McTigue v. McTigue, 116 Mo. l. c. 142,143.] The exception in the statute (Sec. 505, R. S. 1919) empowering women to dispose of property by will has no application. It applies to lands in which the husband has curtesy and not to those from which curtesy has been excluded. In order to sustain appellant's present contention it would be necessary, first, to assume that the title of testatrix was so taken that curtesy was not excluded. We do not think such an assumption should be made against the will.

(2) In the second place, even if the assumption referred to could be made, it would not sustain appellant's position. Her contention is based upon a misconception of the rule concerning the invalidation of wills by mistake.

"Where a testator, in addition to complete testamentary capacity, is in full enjoyment of average physical and educational faculties, it would seem that in the absence of fraud or of undue influence, a mistake, in order to defeat the probate of his entire will, must in substance or effect really amount to one of identity of the instrument executed; as, for instance, where two sisters, in one case, or a husband and wife, in another, prepared their respective wills for simultaneous execution, and through pure error one executed the other's, and vice versa. (Anon. 14 Jur. 402; Re Hunt, L. R. 3 P. & D. 250; Nelson v. McDonald, 61 Hun, (N. Y.) 406.) Short of this, however, or of something amounting, in effect, to the same thing, it is against sound public policy to permit a pure mistake to defeat the duly solemnized and completely competent testamentary act. It is more important that the probate of the wills of dead people be effectivly shielded from the attacks of a multitude of fictitious mistakes than that it be purged of wills containing a few real ones. The latter a testator may, by due care, avoid in his life time. Against the former he would be helpless. . . .

"Assuming that the lawyer's assurance that the
.  .  .  clause would permit the executors to pay over
the entire income after the debts were satisfied, was in-
tended and understood as legal advice upon the construc-
tion of this clause, and that it was legally unsound,
.  .  .  that, also, in the absence of fraud or undue in-
fluence, is insufficient to defeat probate of the will.  It is
no new thing for provisions in wills to turn out under the
established rulings of the courts, to have a very different
meaning from that which the testators themselves, under
the honest but mistaken advice of counsel, thought they
had when the wills were executed, but this has never been
a ground for refusing probate." [In re Gluckman's Will,
87 N. J. Eq. l. c. 641, et. seq.]

"If being of sufficient mental capacity, and free
from insane delusion or undue influence, he executed
the instrument with a knowledge of its nature and con-
tents, and intending that it should be his last will, its
admission to probate cannot be opposed by evidence
that he did not understand the legal effect of all its pro-
visions, or truly appreciate the proportions in which his
property would be thereby distributed.  To allow this
to be done would be to defeat, by evidence of the most
unsatisfactory and untrustworthy character, an instru-
ment voluntarily executed by a competent testator with
all the forms and solemnities which the statute makes
essential to the validity of a testamentary disposition."
[Barker v. Comins, 110 Mass. l. c. 488.]

"How often is it, that the words used by the scriv-
ener convey a different estate from what the testator
designed!  Yet it has always been decided that parol
testimony could not be admitted to prove that the de-
visor meant to give a different estate from what the
will expressed." [Comstock v. Hadlyme, 8 Conn. l. c.
265.]

"No man knows, when he sits down to write a con-
tract or to write his will, but that at the next law or
chancery term, under the revised statutes concerning

intent, he may be stultified in respect to a matter concerning which he knew more and was better qualified to speak, and did speak better than all the world beside. Judging from what we have felt and heard in the course of this term, I am sure, if we impose an understanding of our new statutes in this branch of the law upon any one, as a condition to the making of a will, very few will succeed; and if we undertake to make new wills for every partial failure, while we embark in an interminable labor, I still fear we shall not be better testators than those who were more lawfully employed in disposing of their own estates.'' [Salmon v. Stuyvesant, 16 Wend. l. c. 332.]

In Munnikhuysen v. Magraw, 35 Md. l. c. 287, 288, it was said: If testatrix ''knew and understood what the actual contents of the will were, that would be sufficient, although in point of fact she may have had some erroneous opinions with regard to their legal effect and operation. Sane persons, when they express themselves in writing, are presumed to mean what the writing imports, and it would be dangerous and in plain violation of the Statute of Frauds, to allow it to be impeached or overthrown by evidence *aliunde*, showing that they meant something else, or did not understand its true import and operation.''

The fact that a testator does not appreciate the legal effect of language he voluntarily and intentionally uses does not defeat the will. [Re Carter, 42 Ont. L. 57.]

These excerpts disclose the rule and the reasons for it. The law does not require of every testator, upon pain of refusing his will probate, that he shall have perfect knowledge of the law of real and personal property.

Appellant relies upon Cowan v. Shaver, 197 Mo. 203, and Bradford v. Blossom, 207 Mo. 177. In the Cowan case there was evidence of impaired mental capacity, undue influence and a fraudulent conspiracy to procure the drafting and execution of a will different from that desired by the testator and different from the provisions

he was caused to think it contained when he signed it. In the Bradford case the confidential agent of testatrix procured the will to be drafted in violation of instructions given by testatrix and then induced her to execute it under the belief that it contained the provisions she directed to be put in it. In that case this court approved (but held inapplicable) a rule laid down in Couch v. Eastham, 27 W. Va. 1. c. 805, as follows: ''The mistake which will avail to set aside a will, is a mistake as to what it contains, or as to the paper itself, not a mistake either of law or fact in the mind of the testator, as to the effect of what he actually and intentionally did.'' This is more applicable to the case at bar. The principle of the decisions from which we have quoted applies here, and appellant's position is untenable for this reason also.

IV. The objections made to the answer overlook Section 525, Revised Statutes 1919. The judgment is affirmed. All concur.