Hillsborough, } No. 3459.
Feb. 1, 1944. }

THOMAS J. LEONARD, *Ex'r* v. DELIA STANTON, *Ap't.*

*Thomas J. Leonard* and *Robert J. Doyle* (*John E. Allen* on the brief, *Mr. Leonard* orally), for the appellee.

*Wason, Guertin & Leahy* (*Mr. Guertin* orally), for the appellant.

MARBLE, C. J. The testator died on November 8, 1941. The appellant and James J. Nash are his only heirs. His will is dated June 26, 1940, and was drawn on that date by Thomas J. Leonard, an attorney, who is named therein as executor. There were three witnesses to the execution of the will, one of whom was Mr. Leonard. The last paragraph of the will reads as follows: "All the rest, residue and remainder of my property, whether real, personal or mixed, I give to Thomas J. Leonard in trust for the benefit of my son James J. Nash. Said Trustee shall pay to said James J. Nash a weekly sum of money. Said weekly sum shall depend on the sole judgment of Thomas J. Leonard, Trustee."

The testimony is undisputed that the will was dictated by Mr. Leonard to his secretary in the testator's presence and that the testator read the will after it had been typed and said that everything was "all right."

On the day of the testator's funeral Mr. Leonard exhibited the will to the appellant and her brother-in-law, a Massachusetts attorney. To an inquiry as to what would "become of the residue of the estate after James Nash's death," Mr. Leonard replied that it would go to the appellant. Counsel for the appellant contend that this was a questionable statement of the law and argue that if the testator had been informed that the rule of *Clyde* v. *Lake*, 78 N. H. 322, when applied to the will, might operate to deprive the appellant of the

right to the residue left in the trustee's hands, he would not have signed the instrument; that, although Mr. Leonard's conduct was not consciously fraudulent, his failure to ascertain the law applicable to the situation and to acquaint his client therewith amounted to fraud in law, since an attorney, by virtue of his office, holds himself out "as having special knowledge and ability in the drafting of instruments."

Of course the obvious answer to this argument is that any misrepresentation to be material must have been such as to induce the testator to make some disposal of his property that he would not otherwise have made (*Knox* v. *Perkins*, 86 N. H. 66, 69), and there is nothing in the evidence which tends to contradict Mr. Leonard's assertion that he did precisely what the testator requested him to do or which tends to prove that a different disposition of the property would have been made if the testator had been fully informed of the decision in *Clyde* v. *Lake*.

But the will would not be invalid even though the testator had explained to Mr. Leonard that he desired the appellant to have the residue of the trust fund after his son's death and Mr. Leonard had assured him in good faith that the instrument in question would accomplish that purpose; for, according to the prevailing view, if the testator knew and approved the contents of his will, it is immaterial that he mistook the legal effect of the language used or that he acted upon the mistaken advice of counsel, provided that advice "was given in an honest belief that it was sound." *Elam* v. *Phariss*, 289 Mo. 209, 217. To like effect, see *In re Gluckman's Will*, 87 N. J. Eq. 638, 643, 644.

The general rule has been thus stated: "If in drawing up a will by the instructions of the testator, the draughtsman, without reason or special directions, but in good faith, introduces words the effect of which the testator does not intelligently appreciate when the will is read over to him, they must stand as part of the will; the rule is the same even if the testator asks to have them explained, and their effect is, in good faith, misrepresented to him." 1 Jarman, Wills (7th *ed.*) 34. In the case of *Collins* v. *Elstone*, L. R. [1893] Prob. Div. 1, 4, 5, it is said that where a testator engages another to convey his meaning in technical language and that other person (without the "interposition of fraud") makes a mistake in so doing, "the mistake is the same as if the testator had employed that technical language himself." See *Morrell* v. *Morrell*, 7 Prob. Div. 68, 70, 71; *Comstock* v. *Hadlyme*, 8 Conn. 254, 265; *Mahoney* v. *Grainger*, 283

Mass. 189, 191; Page, Wills (3d *ed.*), *s.* 165; Rood, Wills, *s.* 165; Wig. Ev. (3d *ed.*), *s.* 2421; Warren, "Fraud, Undue Influence, and Mistake in Wills," 41 Harv. Law Rev. 309, 330. See also, *Jones* v. *Bennett*, 78 N. H. 224; *White* v. *Weed*, 87 N. H. 153, 155, 156; *Morrison* v. *Johnson*, 92 N. H. 219, 221.

There is here no evidence that Mr. Leonard did not act in absolute good faith.

Nor is the will invalid by reason of the fact that Mr. Leonard was one of the subscribing witnesses. The executor named in a will is a competent attesting witness. *Stewart* v. *Harriman*, 56 N. H. 25; *Hodgman* v. *Kittredge*, 67 N. H. 254, 255; *Cochran* v. *Brown*, 76 N. H. 9. And the same is true of one who is named therein as a trustee. "A trustee acquires no beneficial interest and if any commissions are to be paid to him, they are given as compensation for services and are fixed by law or by the order of the court. For these reasons, it is held by the weight of authority, that a trustee is a competent attesting witness to a will in which a devise is made to him in trust for others." Page, Wills (3 *ed.*), *s.* 327.

*Exception overruled.*

All concurred.