UNION PLANTERS NATIONAL BANK OF MEMPHIS, Co-Executor of the Will of James Frank Inman, Deceased, Plaintiff-Appellee,

v.

James Edward INMAN et al., Defendants-Appellants.

Court of Appeals of Tennessee, Western Section.

March 20, 1979.

Certiorari Denied by Supreme Court Oct. 22, 1979.

See also, Tenn.App., 588 S.W.2d 763.

Fyke Farmer, Nashville, for James Edward Inman and Mary Joyce Inman Behla.

James D. Causey, Memphis, for Annabel Inman.

Robert L. Taylor, Taylor, Marshall & Uhlmann, Memphis, for Robert S. Inman, co-executor.

Robert M. Johnson, Susan Callison, Widman, Harrold, Allen, Dixon & McDonnell, Memphis, for plaintiff-appellee.

EWELL, Judge.

This is an appeal from the Order of Judge James M. Tharpe of the Circuit Court of Shelby County, Tennessee, sustaining plaintiff's (proponent's) motion for summary judgment in a will contest proceeding. The will was that of James Frank Inman dated November 16, 1971. The proponent of the will was Union Planters National Bank of Memphis, Tennessee, one of the co-executors. Portions of the will were challenged by two of the three children of the testator on the ground of undue influence exercised by Attorney John D. Martin, Jr., draftsman of the will. The proponent moved for a summary judgment pursuant to Rule 56 of the Rules of Civil Procedure insisting that there was no genuine issue as to any material fact, and summary judgment was entered decreeing that the will was the entire, true and valid last will and testament of James Frank Inman. The contestants appealed seeking reversal of the Trial Court and remand of the case for jury trial of the issue of *devisavit vel non*, specifying two assignments of error as follows:

## I.

The judgment of the lower court sustaining the motion for a summary judgment and finding that there was no genuine issue as to any material fact in the cause amounts to a denial of Appellants' right to trial by a jury guaranteed by *Article I, Sec. 6 of the Constitution of Tennessee* and their statutory right under *T.C.A. 32–401, 405 and 408* to have the issues made up under the direction of the court and tried by a jury; they having demanded a jury trial in their answer to the complaint and also moved the court to make up the issues.

## II.

The lower court erred in making the finding as a ground for sustaining the motion for a summary judgment that there is no genuine issue as to a material fact in this cause; that the will propounded by the Plaintiff is the entire, true and valid last will and testament of James Frank Inman, and was not tainted by fraud, misrepresentation or undue influence; and that Plaintiff is entitled to a judgment as a matter of law.

In November of 1971 James Frank Inman, age 77, was terminally ill with lung cancer but mentally alert and active in the management of his business affairs. On November 5, 1971, he and his wife, Annabel Inman, had an office conference with his accountant, Wesley Taylor, to discuss inheritance taxes and the advisability of making a new will to replace his then existing will dated January 21, 1965, prepared by Attorney John D. Martin, Jr. During the course of that conference, Mr. Taylor, at the request of Mr. Inman, made an appointment with Attorney Martin for November 8, and on that date Mr. and Mrs. Inman and Mr. Taylor had a conference with Attorney Martin in his office. Thereafter Attorney Martin drafted a new will for Mr. Inman, and on November 12 Mr. Taylor picked up two carbon copies and had one delivered to the home of Mr. Inman. On November 16 Mr. and Mrs. Inman returned to the offices of Attorney Martin and, in his absence, Mr.

Inman executed the new will in the presence of Martin's associates, S. Shepherd Tate and W. Emmett Marston, who witnessed the execution thereof.

In the 1965 will Mr. Inman had made a specific bequest to the West Tennessee Baptist Orphanage, had left outright to his wife all furniture, furnishings, or articles of tangible personal property of a personal nature located in their home together with 25% of his adjusted gross estate, and left the remainder of his estate equally to his three children of a former marriage, namely, Robert S. Inman, James E. Inman and Mary Joyce Inman Behla. Robert S. Inman and Union Planters National Bank were named co-executors in that will. The new will was substantially identical to the 1965 will, except the property was left in trust rather than outright. The same executors were named, and the same charitable bequest was included. 25% of the remainder was placed in a marital deduction trust, and 75% into a trust for the testator's children and grandchildren. The trusts were subject to spendthrift provisions; the testator's wife took all trust income for life, with the power to encroach upon principal, if necessary; the wife had a power of appointment over the marital trust, failing which it passed at her death to her daughter (who was no relation to the testator); and the principal of the children's trust was distributable to the testator's grandchildren when the last child died.

On January 31, 1972, Mr. Inman died at the age of seventy-eight, and his will was probated in common form in the Probate Court of Shelby County on February 2, 1972, with Robert S. Inman and Union Planters National Bank being appointed co-executors thereof.

On March 3, 1976, James Edward Inman and Mary Joyce Inman Behla, two of the children of the testator, filed a Petition to Contest the Will and subsequently the same was certified to the Circuit Court of Shelby County, Tennessee.

The insistences of the contestants with reference to the will are set out in their

answer to the "Complaint Propounding Will" filed in the Circuit Court proceeding as follows:

The provisions of the 1971 Will creating the trusts of the testator's residuary estate are not the will of the said James Frank Inman, because he was, as defendants are informed, believe and charge, unduly influenced to create the trusts by the attorney who was the draftsman of the instrument. At the time of the making of the instrument, said attorney, according to his statements and admissions, including a Protest filed with the Internal Revenue Service, represented to the said James Frank Inman that E. H. Crump & Company, a client of said draftsman, had a large deficiency claim of several hundred thousand dollars against the defendant, James Edward Inman; "that the creditors of James Edward Inman, including E. H. Crump & Company with its large deficiency judgment claim, could seize Mr. Inman's property to the extent that it might be left to his son, and inquired of Mr. Inman whether he wanted to take precautions against this." The draftsman then outlined the law relating to a spendthrift clause, and has stated that in his opinion he also mentioned that Robert S. Inman, the other son, "likewise had large exposure through real estate ventures." To avoid embarrassment, according to the statements made by the draftsman, of naming only James Edward Inman in the spendthrift clause, the instrument was drawn so as "to protect all the children or persons who might become income beneficiaries" of the trusts. The representations that E. H. Crump & Company had a large deficiency claim of several hundred thousand dollars against James Edward Inman, and that "creditors of James Edward Inman, including E. H. Crump & Company with its large deficiency judgment could seize Mr. Inman's property to the extent that it might be left to his son" were false, as was also the statement that Robert S. Inman "likewise had large exposure through real estate ventures." But for these misrepresentations made by the draftsman of the 1971 Will, the testator would not have devised and bequeathed his residuary estate unto Union Planters National Bank of Memphis as Testamentary Trustee, or provided that 25% of the rest, residue and remainder of his estate should be held in what was denominated the Anna Bell Riggsbee Inman Marital Deduction Trust and 75% thereof to be held by a Trustee under what was denominated "my children's trust."

Wherefore, these defendants ask that it be adjudged that those portions of the 1971 Will creating the Anna Bell Riggsbee Inman Marital Deduction Trust of 25% of the residuary estate and the so called children's trust of 75% of the residuary estate are not the valid will of the testator, James Frank Inman; and demand a jury to try the issue.

The record in this case consists of more than eight hundred pages and numerous exhibits. Four depositions and four affidavits were filed by the proponent and ten depositions and four affidavits were filed by the contestants. The proponents moved the Court, pursuant to Rule 56 of the Rules of Civil Procedure, for a summary judgment "on the grounds that the papers on file herein, including the transcript of the Probate Court proceedings, the depositions, and the Tate, Marston and Lawrence affidavits filed herewith, show that there is no genuine issue as to any material fact, and that Plaintiff is entitled to a judgment, as a matter of law, allowing the continuance of the probate of the 1971 Will as the true Last Will and Testament of James Frank Inman, deceased." After hearing oral argument the Court took the Motion under advisement and subsequently entered "Summary Judgment", the material portions of which were as follows:

IT APPEARING TO THE COURT that there is no genuine issue as to material fact in this cause; that the will propounded by Plaintiff is the entire true and valid last will and testament of James Frank Inman, and was not tainted by fraud, misrepresentation or undue in-

fluence; and that Plaintiff is entitled to a judgment as a matter of law.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court:

1. That the November 16, 1971, Will of the testator is the entire, true and valid last will and testament of James Frank Inman.

■ In the first assignment of error contestants insist that the entry of a summary judgment in a will contest proceeding amounts to an improper denial of the right to a jury trial as provided for under *Article I, Sec. 6 of the Constitution of Tennessee* and Secs. 32–401, 405 and 408 of *T.C.A.* We find no reported decision directly in point, but in numerous cases will contests have been concluded on demurrer sustained by the Court or by verdict directed by the Court whereby contestants were denied the right to submit the issues to a jury. See *Hickey v. Beeler*, 180 Tenn. 31, 171 S.W.2d 277 (1943); *Cude v. Culberson*, 30 Tenn. App. 628, 209 S.W.2d 506 (1947); *Jones v. Sands*, 41 Tenn.App. 1, 292 S.W.2d 492 (1953); *Curry v. Bridges*, 45 Tenn.App. 395, 325 S.W.2d 87 (1959); *Bradford v. Bradford*, 51 Tenn.App. 101, 364 S.W.2d 509 (1962); *Anderson v. Anderson*, 220 Tenn. 496, 419 S.W.2d 166 (1967). The scope of the Rules of Civil Procedure is clearly defined in Rule 1, as follows:

Subject to such exceptions as are stated in them, *these rules shall govern the procedure in the circuit and chancery courts of Tennessee* and in other courts while exercising the jurisdiction of the circuit or chancery courts, *in all civil actions, whether at law or in equity, including civil actions appealed or otherwise transferred to those courts.* These rules shall not be applicable to courts of general sessions except in cases where such courts by special or private act exercise jurisdiction similar to that of circuit or chancery courts. These rules shall be construed to secure the just, speedy and inexpensive determination of every action. (emphasis added)

The subject action, civil in nature, was properly transferred to the Circuit Court from the Probate Court of Shelby County under the applicable statute. Accordingly, we find that where there is no genuine issue as to any material fact summary judgment under Rule 56 is appropriate in a will contest proceeding and does not amount to an improper denial of contestants' right to a jury trial. The first assignment of error is overruled.

■ In the second assignment of error contestants insist, in essence, that the Trial Court erred in granting summary judgment because under the peculiar facts of this case there was a genuine issue as to a material fact. With respect to motions for summary judgment Rule 56.03 provides, in part, as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court's role in ruling on a motion for summary judgment is similar to its role in ruling on a motion for a directed verdict, and it must view the pleadings and evidence before it in the light most favorable to the opponent of the motion and draw all legitimate conclusions of fact therefrom in their favor. If after so doing a disputed issue of material fact is made out, the motion must be denied. *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276 (Tenn.App. 1977); *Stone v. Hinds*, 541 S.W.2d 598 (Tenn.App.1976).

This contest is predicated solely on the conversation between the testator, James Frank Inman, and his attorney, John D. Martin, Jr., in the office of Martin and in the presence of Inman's accountant, Wesley Taylor, and his wife, Annabel Inman, on November 8, 1971. It is undisputed that in the course of that conversation Attorney Martin discussed with the testator options available to him in making his last will and testament including the use of trusts. It is also undisputed that Attorney Martin introduced to the testator the idea that he might

want to include in his will a spendthrift clause which would serve to protect the inheritance of James Edward Inman, one of the sons of the testator, from his creditors, including E. H. Crump & Company (one of the clients of Martin), which had a large deficiency claim of several hundred thousand dollars against him. Attorney Martin further suggested to the testator that his other son, Robert S. Inman, had a large exposure through real estate ventures. After being informed as to the effect of spendthrift clauses and the law relating thereto, the testator instructed Attorney Martin to prepare a will containing two trusts and with a spendthrift clause to protect all of his children or persons who might become income beneficiaries of the trusts.

The will was subsequently drafted and a copy was placed in the hands of the testator on November 12. On November 16 he executed the original of the will, as drafted, without any further contact with Attorney Martin.

Contestants insist that on November 8, 1971, the date of the attorney-testator conference, James Edward Inman was not indebted to E. H. Crump & Company in any amount whatsoever, all of his indebtedness to that Company having been previously satisfied; and they insist that but for the misrepresentations of Attorney Martin with respect to outstanding obligations of James Edward Inman, the testator would not have changed his 1965 will so as to create the two trusts qualified by the spendthrift clause. Contestants seek to have only those portions of the 1971 will creating the two trusts declared invalid as not being the will of the testator, James Frank Inman.

The Trial Judge had before him a large volume of conflicting evidence as to whether or not James Edward Inman was in fact indebted to E. H. Crump & Company on November 8, 1971. We must view the conflicting evidence in the light most favorable to the contestants, and, therefore, for the purpose of our review we must assume that on the date in question James Edward Inman was not indebted to E. H. Crump & Company to any extent whatsoever and

that the comments of Attorney Martin to the testator in this regard were not factual but were made in error due to lack of current accurate information on the subject. A careful review of the record reveals no genuine issue as to any other material fact. We then arrive at the basic issue as to whether or not erroneous statements of Attorney Martin relating to the financial condition of one of the testator's sons form a sufficient basis in law to invalidate a portion of the will.

 We take note of the fact that Attorney Martin and the testator conferred on only one occasion and that both Inman's accountant, Wesley Taylor, and his wife, Annabel Inman, were present during the entire conference. It is also significant that the will was executed on November 16 in the absence of Attorney Martin after the testator had been in possession of a copy of the will since November 12. Accountant Wesley Taylor had a copy from and after November 12. Mrs. Inman testified that her husband reviewed the will in his home and asked her to do likewise before the same was executed on November 16. There is no suggestion in the record that the testator was other than mentally alert and in full control of all of his affairs during the time in question. He lived for a period of two and one-half months after the will was executed without revoking same or making any changes. Under these facts the contestants have not made out a case of undue influence for it is not influence that vitiates a will, but undue influence; and it must go to the extent of depriving the testator of his free agency, and amount to moral coercion which he is unable to resist. *Halle v. Summerfield*, 199 Tenn. 445, 287 S.W.2d 57 (1956) and *Cude, supra*.

 In their pleadings the contestants charge that the representations made by Attorney Martin constituted undue influence. However, upon review of all the evidence it appears that contestants also raise the issue of fraud. The two grounds of undue influence and fraud are closely related, but in the case of fraud the free agency of the testator remains, but he is misled

into doing that which he otherwise would not have done. See *Cude, supra* and the annotation at 28 *A.L.R.* 787. Granting for the purposes of our review that the representations of Attorney Martin were false, the record clearly reflects that they were made in good faith in the belief that they were true and accurate. There is no suggestion in the record that Attorney Martin intentionally misrepresented anything to the testator, or that he had any personal interest in the matter beyond the proper representation of his client. In order to set aside a will on the basis of fraud, the fraud must be of the active, tortious, deceitful kind and not of the constructive or resultant nature. It is not every misstatement that is material and not every statement that is in the legal sense false, and not every exertion of influence that is unjust. *Hager v. Hager*, 13 Tenn.App. 23 (1930). We find as a matter of law that the alleged conduct and representations of Attorney Martin were not of such nature as to void the will or any part thereof on the ground of fraud.

Taking the facts before us in the light most favorable to the contestants, we find that, at most, this is a case where the draftsman of the will was mistakenly informed as to the financial condition of a son of the testator and in the course of his conference with the testator related to him erroneous information. As previously noted, there is a total absence of elements essential to support a charge of undue influence or fraud. In the final analysis the only substantial insistence of the contestants is that a portion of the testator's will is invalid because it was made under a mistake and misapprehension of the facts as they existed at the time of the execution of the will. The Supreme Court of this State in the case of *Anderson v. Anderson*, 220 Tenn. 496, 419 S.W.2d 166 (1967) affirmed the 1917 case of *Bowerman v. Buris*, 138 Tenn. 220, 197 S.W. 490 and quoted the following statement therefrom:

> Moreover, if the evidence could be at all effective, under our system, two points would have to be established: Firstly, that the testator was laboring under a mistake as to the fact; and, secondly, that if the truth had been known he would have made a different disposition, *and we think these facts should appear in the will itself.* (emphasis supplied)

We have been unable to find a Tennessee case wherein the mistake and misapprehension was brought about by statement of counsel. The New Hampshire case of *Leonard v. Stanton*, 93 N.H. 113, 36 A.2d 271 (1944) involves a factual situation where the draftsman allegedly misled the testator as to the legal effect of his will. In that case the Court held as follows:

> . . . (A)ccording to the prevailing view, if the testator knew and approved the contents of his will, it is immaterial that he mistook the legal effects of the language used or that he acted upon the mistaken advice of counsel; provided that the advice "was given in an honest belief that it was sound."

The Missouri case of *Elam v. Phariss*, 289 Mo. 209, 232 S.W. 693 decided in 1921 is based upon facts not substantially dissimilar to the case before us. In that case the Supreme Court of Missouri quoted with approval language from the case of *Couch v. Easthan*, 27 W.Va. 796 *loc. cit.* 805, 55 Am. Rep. 346 as follows:

> The mistake which will avail to set aside a will is a mistake as to what it contains, or as to the paper itself, not a mistake either of law or fact in the mind of the testator, as to the effect of what he actually and intentionally did.

See also *Allmon v. Pigg*, 82 Ill. 149, 25 Am.Rep. 303 (1876).

We find the foregoing to be the majority view, and the Tennessee cases of *Bowerman, supra* and *Anderson, supra* are not inconsistent therewith. In this case it does not appear within the will itself that Inman was laboring under a mistake as to the facts and that if the erroneous statements had not been made by Martin, he would have made a different disposition. Therefore, the second assignment of error is overruled.

The Trial Judge correctly found that there was no genuine issue as to a material fact in this cause and that the proponent

was entitled to a judgment as a matter of law. The decision of the Trial Court is in all things affirmed.

On the date this case was argued before this Court the attorney for the appellants filed herein a Motion seeking a determination by this Court as a matter of law that the co-executor, Union Planters National Bank of Memphis, has no right to oppose the contest of the will and that the widow, Annabel Riggsbee Inman, has no standing to oppose the contest. These issues had not been previously raised in or passed upon by the Circuit Court or the Probate Court, and counsel for the appellants desires an initial ruling from us. We decline to rule one way or the other. This Court has no original jurisdiction. Its jurisdiction is appellate. *T.C.A.* *16–408.* Accordingly, the motion is overruled and disallowed.

The costs of appeal are adjudged against the appellants.

NEARN and SUMMERS, JJ., concur.