### ESTATE of Willis J. WEEKS.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1983.
Decided July 11, 1983.

Rudman & Winchell, Gerald E. Rudman, Frank T. McGuire (orally), Bangor, for Judith A. Billington.

Eaton, Peabody, Bradford & Veague, P.A., John E. Cunningham, Calvin E. True (orally), Bangor, for Martha Jane Weeks.

Before McKUSICK, C.J., and GODFREY, ROBERTS, CARTER,* VIOLETTE and WATHEN, JJ.

PER CURIAM.

Judith A. Billington appeals from a judgment entered on September 3, 1982, in the Waldo County Probate Court, ordering that the marital bequest under her father's will be computed in accordance with the federal estate tax laws in effect on the date of the testator's death. Billington is a devisee under the will, a contingent beneficiary of a testamentary trust established by the will, the testator's daughter by a prior marriage, and his only child. We affirm the judgment of the Probate Court.

I.

Willis J. Weeks (the "testator" or the "decedent") executed his will on June 23, 1975. The first paragraph of the will bequeathed (a) $500.00 to the Katahdin Area Boy Scouts; (b) $2,000.00 to Judith Billington; and (c) $200.00 each to Billington's children. The second paragraph of the testator's will bequeathed to his wife, Martha Jane Weeks, "*an amount equal to the maximum estate tax marital deduction allowable in determining the federal estate tax on my estate....* In making the computations necessary to determine the amount of this gift and bequest the final determinations for federal estate tax purposes shall control." (Emphasis added.)

The next paragraph of the testator's will bequeathed the residue and the remainder of the estate to a testamentary trust. The corporate trustee was directed to pay ex-

---

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

penses of administration, debts, and taxes. Thereafter, the testator provided that:

> During the lifetime of MARTHA JANE WEEKS, the corporate Trustee may in its absolute discretion, pay over to her, the said MARTHA JANE WEEKS, for her use, or apply, or expend, for her direct or indirect benefit, all income and any principal of this Trust, that the Trustee shall deem proper for her comfortable care, support and maintenance, taking into consideration other assets available to her. It is my specific intent that the Trustee shall pay over to the said MARTHA JANE WEEKS all of the net income from the Trust, unless however, at any time or during any year the said MARTHA JANE WEEKS should prefer to refuse to accept any or all of the net income, then during any year the net income arising from the Trust is not used, the Trustee is authorized to accumulate such income, add it to the principal and reinvest it.

The testator directed the trustee to pay trust income upon Martha Weeks' death to Judith Billington. The testator directed that, upon Judith Billington's death, the remaining trust corpus be divided among his surviving grandchildren. Martha Weeks and the corporate trustee were appointed co-executors.

When the testator executed his will in June of 1975, the federal maximum marital deduction was fifty percent of the decedent's adjusted gross estate. 26 U.S.C. § 2056(c)(1) (1975), *amended by* 26 U.S.C. § 2056(c)(1)(A) (1979). The Tax Reform Act of 1976 changed the limit on the allowable marital deduction to the *greater of $250,000.00 or fifty percent of the adjusted gross estate* for decedents dying after December 31, 1976.[1] 26 U.S.C. § 2056(c)(1)(A). The 1976 Act also contained a transitional clause which retained the pre-1976 fifty percent maximum marital deduction formula for testators who executed wills prior to January 1, 1977, and died between January

1, 1977, and January 1, 1979. Tax Reform Act of 1976, Pub.L. No. 94–455, § 2002(d)(1), 90 Stat. 1856 (1976).

Willis J. Weeks died on January 16, 1980, survived by his wife and daughter. The estate representatives used the federal tax law in effect at the time of the decedent's death to calculate a zero estate tax liability. The Internal Revenue Service accepted, as filed, the estate tax return. In short, Martha Weeks claimed all of the residuary estate under the marital deduction formula clause.

On May 8, 1981, Judith A. Billington filed a formal "petition for order of complete settlement of estate" in the Waldo County Probate Court, pursuant to 18–A M.R.S.A. §§ 3–1001 to –1002 (1981). The petition asked the court to construe whether that portion of the will containing the marital deduction formula was intended to apply the federal estate tax law in effect at the time of execution or the law in effect at the time of the decedent's death. On May 28, 1981, Martha Weeks filed a reply stating that: "It seems clear that the language used by the testator in creating the marital deduction bequest must be construed by application of the federal estate tax law in effect on the decedent's date of death." Martha Weeks also moved, pursuant to M.R.Prob.P. 12(a)(4), that the court make this determination without a hearing.

In an affidavit from the testator's attorney (the scrivener of the will), the petitioner attempted to introduce extrinsic evidence to prove that the testator intended that his wife would receive only one half of his estate, and that due to the testator's reliance upon the attorney's misinterpretation of the effect of the new law, the testator failed to change his will to reflect his actual intentions.

By a decision and order dated August 5, 1982, the Probate Court concluded that:

> The intention of the testator in respect to "marital deduction" is plain, clear, without doubt and unambiguous, that an evi-

---

1. The allowable marital deduction was subsequently changed again by the Economic Recovery Tax Act of 1981. 26 U.S.C. § 2056 (Supp. 1983).

dentiary hearing to aid and guide the court in construing the will is not granted, and it is; *Ordered* that the federal estate taxes be calculated in accordance with the laws in effect on the date of death of the decedent.

The order was modified on August 19, 1982 to read:

that the amount of the marital bequest ... be computed in accordance with the federal estate tax laws ... in effect on the date of death of the decedent.

Petitioner Billington appealed to the Law Court.

## II.

The petitioner contends that the Probate Court erred as a matter of law in computing the marital bequest with reference to the federal estate tax law in effect at the time of the testator's death rather than the law in effect at the time the will was executed. In the alternative, the petitioner claims that the court erred in refusing to permit a hearing to admit extrinsic evidence of the testator's intent with respect to the bequest. We reject both of these contentions. We determine that the denial of a hearing did not affect the result in this case and that the Probate Court correctly interpreted the language of the marital bequest.

■ Upon Billington's petition to construe the will, the probate judge held a conference with counsel for both parties, to determine the future course of the litigation. Counsel supplied the court with copies of pertinent documents and memoranda of law. Both parties were also provided ample opportunity to present additional affidavits or submit materials by way of an offer of proof. Indeed, the petitioner does not suggest to us any additional evidence which she intended to offer if she had been afforded a hearing. Without endorsing the court's somewhat informal procedure, we conclude that any error has not prejudiced the petitioner. Even if the proffered evidence of the testator's intent had been considered, this would not affect what we determine is the proper interpretation of this will. Assuming that the extrinsic evidence showed that the testator subjectively desired to leave only one half of his estate to his widow, his expressed intent as found in the language of the will could not achieve this purpose. This is not a case for will reformation, and, hence, we must give full weight to the testator's *expressed* intent.

■ We also conclude that the Probate Court correctly determined that the plain meaning of the will's marital deduction formula requires the application of the federal estate tax law in effect at the time of the testator's death and that the court correctly interpreted the requirements of the federal law. A comprehensive transitional clause, Pub.L. No. 94–455, § 2002(d)(1), 90 Stat. 1856, clearly establishes that the change in the limit on the allowable marital deduction contained in the 1976 Tax Reform Act applies to estates of decedents dying after December 31, 1976 unless four criteria are satisfied. That transitional clause provides:

(1)(A) Except as provided in subparagraph (B), the amendment made by subsection (a) [amending subsec. (c)(1) of this section] shall apply with respect to the estates of decedents dying after December 31, 1976.

(B) If—

(i) the decedent dies after December 31, 1976, and before January 1, 1979,

(ii) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before January 1, 1977, or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,

(iii) the formula referred to in clause (ii) was not amended at any time after December 31, 1976, and before the death of the decedent, and

(iv) the State does not enact a statute applicable to such estate which con-

strues this type of formula as referring to the marital deduction allowable by Federal law as amended by subsection (a), then the amendment made by subsection (a) shall not apply to the estate of such decedent.

*Id.* The Weeks estate did not satisfy all of the exempting criteria, and Willis Weeks died well after the effective date of the 1976 amendment. *Estate of Schwartz,* 92 Misc.2d 40, 399 N.Y.S.2d 386 (1977), cited by both parties, does not contradict our application of the transitional clause. In *Schwartz,* the surviving spouse was denied the entire estate under the will's maximum marital deduction clause because the testator died within the grace period of the transitional rule. In addition, the testator had *specifically* bequeathed the remaining fifty percent to other beneficiaries.

We also distinguish the Delaware case of *Reynolds v. Russell,* 433 A.2d 699 (Del.Ch. 1981). In *Reynolds,* the terms of the will and the dates of execution and death were very similar to the case at bar. The widow attempted to claim the entire estate pursuant to the testator's bequest to his wife of a share which "will obtain for my estate the maximum Marital Deduction permitted under the Internal Revenue Code of 1954, *as amended...*." *Id.* at 700 (emphasis added). The remainder of the will *specifically* bequeathed "one-fourth of the then remaining residue of my estate" to the testator's daughter and the other "one-fourth of the then remaining residue of my estate" in equal shares to his two step-sons. In holding against the widow, the Delaware Court determined that the term "as amended" did not necessarily refer to future amendments, and hence, did not indicate an intent on the part of the testator that the will be governed by any law other than that existing at the time of execution. *Id.* at 702–03. As in *Schwartz,* this interpretation of the testator's intent was supported by the explicit disposition of the remaining fifty percent of the estate.

In the case at bar, there is no such explicit disposition of the remainder of the estate.

Rather the remainder is placed in trust for the widow for life—a common tax avoidance scheme of pre-ERTA estate planning. In fact, unlike either *Reynolds* or *Schwartz,* the entire will evidences an intent to leave as much as possible to the widow with a minimum estate tax liability. The Probate Court's disposition of this case achieves that purpose.

We are also not persuaded by the petitioner's allegation that Willis Weeks was misled by his attorney's misrepresentation of the effect of the new law. In "a factual situation where the draftsman allegedly misled the testator as to the legal effect of his will," we subscribe to the majority view that "it is immaterial that [the testator] mistook the legal effects of the language used or that [the testator] acted upon the mistaken advice of counsel; provided that the advice 'was given in an honest belief that it was sound.'" *Union Planters National Bank of Memphis v. Inman,* 588 S.W.2d 757, 762 (Tenn.Ct.App.1979) (quoting *Leonard v. Stanton,* 93 N.H. 113, 36 A.2d 271 (1944)). Moreover, "[w]hen a will is drafted by an attorney, words used in it are to be given technical meaning they have acquired, unless a different intent can be clearly gathered by the reading of the entire document." *Matter of Will of Schieder,* 107 Misc.2d 1029, 1030–31, 436 N.Y.S.2d 591, 592 (1981); *see also Fiduciary Trust Co. v. Brown,* 152 Me. 360, 372, 131 A.2d 191, 198 (1957) (use of a technical word leads to presumption that testator intended word in its technical legal sense).

■ Our analysis of the marital deduction formula used in this will is bolstered by the general rule that the law in effect on the date of a testator's death is the law applicable to the testator's will. *See Cook v. Stevens,* 125 Me. 378, 383, 134 A. 195, 197 (1926); *see also In re Estate of Leavy,* —— N.H. ——, 442 A.2d 588, 590 (1982) ("The construction and effect of a will ... are ordinarily governed by the law in force when it became effective ... and a will becomes effective upon the death of the testator."). Further, "it is generally held that a will made before

the passage of a statute is governed by the provisions thereof if the testator dies after its passage, unless it is clear that the legislature intended the statute to apply only to wills executed after its passage." 80 Am. Jur.2d *Wills* § 1123 (1975) (footnotes omitted).

Our examination of both the tax statute and the rules governing the effect of wills requires us to conclude that the marital deduction formula clause in this will must be computed in accordance with the federal estate tax laws in effect on the date of the testator's death. The result that this conclusion compels is consistent with the testator's intent as expressed within the will itself. We need not look any further. Accordingly, we affirm the judgment of the Probate Court.

The entry is:

Judgment affirmed.

All concurring.